

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Houston District Office**
1919 Smith Street, 6th Floor
Houston, TX 77002
(346) 327-7700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 03/05/2026

**To:** Ms. Tiffany N. Dixon
12313 Winebrook Drive
Pearland, TX 77584
Charge No: 460-2024-08085

EEOC Representative and email:        SAMANTHA SALAZAR
INVESTIGATOR
SAMANTHA.SALAZAR@EEOC.GOV

---

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 460-2024-08085.

On behalf of the Commission,

Digitally Signed By:Rayford O. Irvin
03/05/2026

Rayford O. Irvin
District Director

cc:     Carson Bailey, Special Counsel
Harris County Attorney's Office
1019 CONGRESS ST. FL 15
Houston, TX 77002

Please retain this Notice for your records.

Enclosure with EEOC Notice of Closure and Rights (05/25)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you** *receive* **EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 460-2024-08085 to the District Director at Rayford O. Irvin, 1919 Smith Street 6th Floor, Houston, TX 77002.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 460-2024-08085 to the District Director at Rayford O. Irvin, 1919 Smith Street 6th Floor, Houston, TX 77002.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

Enclosure with EEOC Notice of Closure and Rights (05/25)

## NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at:
http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

### "Regarded as" coverage

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

EEOC Form 5 (07/24)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
| --- | --- |
| EEOC | 460-2024-08085 |
| Texas Workforce Commission Civil Rights Division | |

---

Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)*: Miss Tiffany N. Dixon
Home Phone:    (281) 450-4674
Year of Birth:   1987
Street Address:   12313 Winebrook Drive .
Pearland, TX 77584

---

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: Harris County District Attorney's Office

No. Employees, Members: 501+ Employees

Phone No.: (713) 274-5800

Street Address:    1201 Franklin Street, 12 FL.

Houston, TX 77002

Name:

No. Employees, Members:

Phone No.:

Street Address:

---

DISCRIMINATION BASED ON: .
Disability, Retaliation

---

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 02/20/2024
Latest: 08/15/2024

---

THE PARTICULARS ARE:

I. In or about August 2023, I was notified by my then Division Chief, Angela Beavers, that Mrs. Alexis Mitchell had met with Human Resources Director, Elizabeth Stevens, in an attempt to have adverse action taken against me. I believe that that was in retaliation for my conversation with Mrs. Mitchell on or about August 15, 2024, regarding her using her supervisory authority to settle one of my cases for a high settlement amount without my knowledge or the knowledge of Ms. Beavers. Starting in or about October 2023, I was subjected to a hostile working environment and repeated harassment by my new supervising attorney, Ms. Cornelia Hartman. I reported to Ms. Beavers that I was being targeted and singled out for discipline disparately by Ms. Hartman, in combination with Mrs. Mitchell, numerous times in the form of repeated tattle-telling. On or about February 20, 2024, I met with both Ms. Beavers and Ms. Hartman and I verbalized my concerns of a hostile working environment and disparate, discriminatory treatment from Ms. Hartman compared to the treatment of her previous white paralegal, Ms. Patricia Smith. Additionally, I also complained of Ms. Hartman assigning tasks to me that were not assigned to her previous paralegal, Ms. Smith, nor any of the other paralegals in the Asset Forfeiture division. I have made similar complaints about the disparate assignment of tasks to the current Division Chief, Michael Butera, coupled with the request that I be switched to a new supervising attorney and my concerns were disregarded. To my knowledge, Ms. Hartman would say to Ms. Smith that she "missed [her]" during the height of Ms. Hartman's complaints against me, which coincided with my attempt to notify Ms. Beavers of the racially discriminatory environment created by Ms. Hartman. Ms. Hartman has complained about the looks on my face during meetings, nitpicking between if I brought a laptop or a notepad to meetings, wrongfully accused me of creating and transmitting settlement documents to opposing counsel without her review, wrongfully accused me of forging her signature

---

Page 1 of 3

EEOC Form 5 (07/24)

on official documents, and repeatedly calling for supervisory intervention meetings with Ms. Beavers in order to address minor matters or anything related to my job performance. On or about February 27, 2024, I met with Ms. Beavers and Denise Oncken, Executive Bureau Chief, regarding my concerns about a hostile work environment and being targeted by conduct from Mrs. Mitchell and Ms. Hartman, in combination. To my knowledge since this time, Mrs. Mitchell has spread negative rumors about me to new staff hires in the division, specifically with Mrs. Bethany Belisle, to sabotage my working relationship with her and others. Because of Mrs. Mitchell's actions, I have observed the reluctance of the new staff to work or communicate with me. To my knowledge, Mr. Butera was notified of this by Ms. Morgan Ybarra and Mrs. Mitchell was not disciplined or terminated for her actions. II. To my knowledge on or about April 3, 2024, my co-worker and Paralegal, Shannon Burkhart, had called me "cancer" in front of other staff, which included Mrs. Mitchell, in Mrs. Mitchell's office and Ms. Burkhart was insinuating that they were working on cutting the cancer out of the division. Additionally, Ms. Burkhart has previously refused job directives from not only Ms. Hartman, but also her current supervising attorney, Kristal Snelson. To my recent knowledge, both Ms. Burkhart and Ms. Eleanor Delgado were watching the 2024 Summer Olympics together and refused to answer incoming calls. To my knowledge, Ms. Beavers, Mr. Butera, Ms. Stevens, Mrs. Oncken, and Vivian King, First Assistant Chief of Staff, were all made aware of Ms. Burkhart's refusal to answer the phone. Neither Ms. Burkhart, nor Ms. Delgado were disciplined or terminated for their actions. III. In or about March 2024, I informed Mr. Butera and Ms. Hartman of my disabilities and need for physical therapy. On or about August 2, 2024, I submitted both an informal request for accommodations during trial preparation and a medical leave of absence for one week for my medical treatment. On or about August 5, 2024, I was abruptly placed on paid administrative leave by Ms. Stevens, pending an internal investigation regarding multiple concerns. On or about August 15, 2024, I was notified of Ms. Stevens' desire to end my employment contract and I was given the option to either resign, in lieu of termination, which I did not accept. On or about August 16, 2024, I was terminated based on approximately three areas of concern. Prior to my abrupt termination, I had not been given any prior disciplinary action plans, and my last performance rating in my employee evaluation was all better than average, if not outstanding. IV. I believe I have been discriminated against because of my race (Black) and in retaliation for reporting the unlawful racial harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended. I further believe I have been discriminated against because of my disabilities and being retaliated against for asking for a medical leave of absence, in violation of the Americans with Disabilities Act of 1990, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Digitally Signed By: Miss Tiffany N. Dixon
08/30/2024

Charging Party Signature & Date

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

Signature of Complainant

Subscribed and sworn to before me this date: _____

CP Enclosure with EEOC Form 5 (06/24)

## PRIVACY ACT STATEMENT

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (06/24).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

EEOC Charge No.:          460-2024-08085 (Amended)

Charging Party:           Tiffany Dixon

Respondent:               Harris County District Attorney's Office

This charge is amended to include the following:

1.       In Spring 2023, I observed a significant disparity in the assignment of new cases within the Asset Forfeiture Division, with the majority being disproportionately assigned to my fellow paralegals, Dionda Jones and Patricia Smith. Chief Alexis Mitchell, under the direction of then-Division Chief Angela Beavers, was responsible for the disbursement of these cases. I believe cases were assigned to Ms. Smith to obscure the fact that Ms. Jones was the true target of this inequitable workload. During this time, I drafted a 128 Motion to Compel with approximately 90 pages of exhibits for a monetary seizure case, which Alexis settled around February 14, 2023, without consultation with myself or Mrs. Beavers, whom had set the final settlement offer. The settlement offer made my efforts to draft the motion immediately moot.

Additionally, I noticed that Mrs. Mitchell ensured the least amount of cases were assigned to herself and her paralegal, Ms. Burkhart, further highlighting inequities in the distribution process. On August 7, 2023, Ms. Beavers confronted Mrs. Mitchell about these practices in the presence of Ms. Jones, and on August 15, 2023, I personally confronted Mrs. Mitchell regarding her handling of my case. Following these events and the investigation initiated by Ms. Beavers, I believe Mrs. Mitchell retaliated against both me and Ms. Jones."

On or about August 11, 2023, while Ms. Beavers was assigning new tasks to the Asset Forfeiture paralegals, I suggested that the paralegals renew our previous proposal to petition the DA Administration for a raise. On August 15, 2023, I confronted Mrs. Mitchell about her decision to settle one of my cases without ever working on or supervising it herself.

On or about August 25, 2023, Mrs. Stevens arranged a meeting with District Attorney Kim Ogg and First Assistant Chief of Staff Vivian King to ambush Ms. Beavers, only revealing that the meeting was to address "some paralegal issues."

On August 30, 2023, Mrs. Stevens and Mrs. King informed the paralegals that they were taking away the paralegals ability to extend settlement offers and that they would be reviewing the Asset Forfeiture system for changes. During this meeting, I personally handed Mrs. Stevens a copy of the most recent paralegal proposal and informed her that we were preparing another one to ask for a raise.

On or about September 1, 2023, Mrs. Mitchell submitted a proposal, without Ms. Beavers' review, to Human Resources Director Elizabeth Stevens, recommending a 'to-do' system that would transfer all paralegal caseloads to attorneys. This proposal appeared to be an effort by Mrs. Stevens and Mrs. Mitchell to extinguish the paralegals' leverage for wage negotiations and as retaliation by Mrs. Mitchell for confronting her for her actions in settling my case for a high settlement amount without my knowledge or the knowledge of Ms. Beavers.

Starting in or about October 2023, I was subjected to a hostile working environment and repeated harassment by my new supervising attorney, Ms. Cornelia Hartman. I reported to Ms. Beavers that I was being targeted and singled out for discipline disparately by Ms. Hartman, in combination with Mrs. Mitchell, numerous times in the form of repeated tattle-telling. To my knowledge, Ms. Hartman would say to Ms. Smith that she "missed [her]" during the height of Ms. Hartman's complaints against me, which coincided with my attempt to notify Ms. Beavers of the racially discriminatory environment created by Ms. Hartman. Ms. Hartman has complained about the looks on my face during meetings, nitpicking between if I brought a laptop or a notepad to meetings, wrongfully accused me of creating and transmitting settlement documents to opposing counsel without her review, wrongfully accused me of forging her signature on official documents, and repeatedly calling for supervisory intervention meetings with Ms. Beavers in order to address minor matters or anything related to my job performance. Further, Ms. Hartman began to intentionally ignore work that I would send her to review, which ultimately contributed to the accusation that I was not keeping up with my work prior to termination.

On or about February 20, 2024, I met with both Ms. Beavers and Ms. Hartman and I verbalized my concerns of a hostile working environment and disparate, discriminatory treatment from Ms. Hartman compared to the treatment of her previous white paralegal, Ms. Patricia Smith. Additionally, I also complained of Ms. Hartman assigning tasks to me that were not assigned to her previous paralegal, Ms. Smith, nor any of the other paralegals in the Asset Forfeiture division.

I have made similar complaints about the disparate assignment of tasks to the current Division Chief, Michael Butera, coupled with the request that I be switched to a new supervising attorney and my concerns were disregarded.

On or about February 27, 2024, I met with Ms. Beavers and Denise Oncken, Executive Bureau Chief, regarding my concerns about a hostile work environment and being targeted by conduct from Mrs. Mitchell and Ms. Hartman, in combination.

To my knowledge since this time, Mrs. Mitchell has spread negative rumors about me to new staff hires in the division, specifically with Mrs. Bethany Belisle, to sabotage my working relationship with her and others. Because of Mrs. Mitchell's actions, I have observed the reluctance of the new staff to work or communicate with me. To my knowledge, Mr. Butera was notified of this by Ms. Morgan Ybarra and Mrs. Mitchell was not disciplined or terminated for her actions.

To my knowledge on or about April 3, 2024, my co-worker and Paralegal, Shannon Burkhart, had called me "cancer" in front of other staff, which included Mrs. Mitchell, in Mrs. Mitchell's office and Ms. Burkhart was insinuating that they were working on cutting the cancer out of the division. Additionally, Ms. Burkhart has previously refused job directives from not only Ms. Hartman, but also her current supervising attorney, Kristal Snelson.

To my recent knowledge, both Ms. Burkhart and Ms. Eleanor Delgado were watching the 2024 Summer Olympics together and refused to answer incoming calls. To my knowledge, Ms.

Beavers, Mr. Butera, Ms. Stevens, Mrs. Oncken, and Vivian King, First Assistant Chief of Staff, were all made aware of Ms. Burkhart's refusal to answer the phone. Neither Ms. Burkhart, nor Ms. Delgado were disciplined or terminated for their actions.

On or about June 18, 2024, Ms. Cornelia Hartman behaved unprofessionally by yelling at me because I had sent a set of gambling petitions to Mrs. Mitchell for review. Ms. Hartman was intentionally ignoring the work that I was sending her review and approximately two months had gone by before Mrs. Mitchell notified Ms. Hartman that I asked for her assistance for review. After the incident, Ms. Hartman completely misrepresented the matter by telling him that I had come to start a fight with her over a file.

In or about March 2024, I informed Mr. Butera and Ms. Hartman of my disabilities and need for physical therapy. On or about August 2, 2024, I submitted both an informal request for accommodations during trial preparation and a medical leave of absence for one week for my medical treatment. On or about August 5, 2024, I was abruptly placed on paid administrative leave by Ms. Stevens, pending an internal investigation regarding multiple concerns. On or about August 15, 2024, I was notified of Ms. Stevens' desire to end my employment contract and I was given the option to either resign, in lieu of termination, which I did not accept. On or about August 16, 2024, I was terminated based on approximately three areas of concern. Prior to my abrupt termination, I had not been given any prior disciplinary action plans, and my last performance rating in my employee evaluation was all better than average, if not outstanding.

On or about September 25, 2024, Kristal Snelson revealed that Mrs. Mitchell told her that set-up on Tiffany "was a long process." On or about October 14, 2024, Mrs. Snelson further revealed that she believed that Mrs. Mitchell was solely responsible for Tiffany's termination because Mrs. Mitchell had told her that she had been "keeping a file" on Tiffany for years.

On or about September 19, 2024, the Harris County District Attorney's Office issued a preservation email to various individuals, specifically those in the Asset Forfeiture Division, directing them to refrain from deleting any items. On or about September 20, 2024, Mr. Butera conducted a division meeting where he explicitly instructed staff to comply with the preservation directive and stated that no items should be deleted. Despite this clear directive, on or about October 8, 2024, Ms. Burkhart was overheard telling Mrs. Mitchell and Ms. Hartman that she had deleted multiple items from her computer.

On or about September 25, 2024, I learned that Human Resources Director Elizabeth Stevens announced her intent to retire from the Harris County District Attorney's Office, effective October 25, 2024. Given Mrs. Stevens' direct involvement in decisions that reinforced a hostile work environment, racially discriminatory conduct, and retaliatory actions against me, I am deeply concerned about the timing of her retirement and its potential impact on this investigation. Her central role in the events outlined in my charge raises questions about the preservation of critical evidence and records, including emails, meeting notes, and other documentation related to my claims. I respectfully request that the EEOC ensure all relevant materials are preserved and that Mrs. Stevens is held accountable for providing testimony to

fully address her actions during her tenure. Her departure should not hinder the investigation or the ability to uncover systemic issues within the workplace.

On or about October 10, 2024, I received an unemployment benefits determination letter from the Texas Workforce Commission, which stated that their investigation found the '...employer fired you for a reason that was not misconduct connected with the work.' This determination also confirmed my eligibility for unemployment benefits. On the same day, Mr. Butera convened a division meeting to announce that all paralegal caseloads would be transferred to the Asset Forfeiture attorneys by the end of the month.

II. I believe I have been discriminated against because of my race (Black) and in retaliation for reporting the unlawful racial harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended. I further believe I have been discriminated against because of my disabilities and being retaliated against for asking for a medical leave of absence, in violation of the Americans with Disabilities Act of 1990, as amended.

2/12/25
Date

Signature