**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **TIFFANY NICOLE DIXON** | § | |
| Plaintiff, | § | |
| | § | |
| -v- | § | **Civil Action No. 4:26-cv-04418** |
| | § | |
| **HARRIS COUNTY, TEXAS** | § | |
| Defendant. | § | |

**DECLARATION OF TIFFANY NICOLE DIXON**

I, Tiffany Nicole Dixon, declare under penalty of perjury under the laws of the United States that I am over eighteen years of age, that I am competent to testify, and that I have personal knowledge of the facts stated below:

1. I am the Plaintiff in this case.
2. I was formerly employed by Harris County in the Asset Forfeiture Division of the Harris County District Attorney's Office.
3. My employment was terminated on August 16, 2024.
4. On August 19, 2024, I initiated the EEOC process in person.
5. On August 30, 2024, I executed EEOC Charge No. 460-2024-08085.
6. On February 12, 2025, the EEOC finalized my Amended Charge under the same charge number.

**Exhibit A: August 11, 2026 Preservation Demand and Proof of Service**

7. Attached as Exhibit A-1 is a true and correct copy of my August 11, 2026 formal preservation demand to Harris County.
8. I served the August 11, 2026 preservation demand by electronic mail, First-Class Mail, and Certified Mail Return Receipt Requested.

9. Attached as Exhibit A-2 is a true and correct copy of proof that I emailed the August 11, 2026 preservation demand.

10. Attached as Exhibit A-3 is a true and correct copy of the returned green card reflecting receipt by Harris County.

11. Attached as Exhibit A-4 is a true and correct copy of the certified-mail receipt or postmarked receipt.

12. Attached as Exhibit A-5 is a true and correct copy of the payment receipt.

13. Attached as Exhibit A-6 is a true and correct copy of the USPS tracking screenshot showing the online tracking status.

14. Although the USPS online tracking information did not reflect final delivery when I checked it, I received the returned green card confirming receipt.

**Exhibit B: Meet-and-Confer Communications Regarding Limited Expedited Discovery**

15. Attached as Exhibits B-1 through B-5 are true and correct copies of meet-and-confer communications between me and counsel for Defendant Harris County concerning limited expedited discovery.

16. Attached as Exhibit B-1 is a true and correct copy of my August 28, 2026 meet-and-confer email regarding limited expedited discovery.

17. Attached as Exhibit B-2 is a true and correct copy of Defendant's September 1, 2026 response email.

18. Attached as Exhibit B-3 is a true and correct copy of my September 1, 2026 clarification response email.

19. Attached as Exhibit B-4 is a true and correct copy of September 1, 2026 email communications scheduling the telephone conference.

20. Attached as Exhibit B-5 is a true and correct copy of Defendant's September 2, 2026 written clarifications to my post-call confirmation email regarding limited expedited discovery.

21. On September 1, 2026, I conferred by telephone with counsel for Defendant Harris County regarding my request for limited expedited discovery.

22. During the September 1, 2026 telephone conference, Defendant's counsel stated that Harris County issued litigation holds on or about September 9, 2024 and July 7, 2026.

23. During the same telephone conference, Defendant's counsel stated that neither hold has been lifted.

24. During the same telephone conference, Defendant's counsel stated that Harris County Universal Services was notified.

25. During the same telephone conference, Defendant's counsel stated that Harris County would not produce the hold letters because it considers them work product.

26. During the same telephone conference, Defendant's counsel stated that Defendant would not agree to limited expedited discovery before the Rule 26(f) conference while Defendant's Motion to Dismiss is pending.

27. After the September 1, 2026 telephone conference, I sent Defendant's counsel an email memorializing my understanding of what was discussed during the call.

28. On September 2, 2026, Defendant's counsel responded to my post-call email with written clarifications.

29. In the September 2, 2026 written clarifications, Defendant's counsel stated that Harris County's practice is to instruct management-level employees not to communicate with a former employee who is the subject of a litigation hold.

30. In the September 2, 2026 written clarifications, Defendant's counsel also stated that I should contact current management-level employees through counsel.

31. Defendant did not agree to limited expedited discovery before the Rule 26(f) conference.

**Exhibit C: Transcript Excerpt of September 20, 2024 Preservation-Related Meeting**

32. I received from Dionda Jones a recording that I understand to be of an Asset Forfeiture Division meeting conducted by Michael Butera on or about September 20, 2024.

33. I preserved the recording.

34. Attached as Exhibit C is a true and correct transcript excerpt of the relevant portion of the recording.

35. I prepared the transcript excerpt to the best of my ability.

36. The relevant discussion begins at approximately 45:53 and ends at approximately 47:52.

37. In the excerpt, Mr. Butera states that an email had gone out "about preserving some documents or evidence."

38. In the excerpt, Mr. Butera states that the email went out "very broadly to a huge group of people."

39. In the excerpt, Mr. Butera states that personnel were "under an obligation to preserve anything" they had.

40. In the excerpt, Mr. Butera describes the directive as a "hold order" meaning "don't destroy anything."

41. In the excerpt, Mr. Butera states that if someone had "a practice of deleting messages" or a setting that deletes messages, there was a duty "to not do that."

**Exhibit D: September 20, 2024 Text Messages Concerning Preservation Email and Meeting**

42. Attached as Exhibit D is a true and correct copy of a September 20, 2024 text-message exchange between me, Dionda Jones, Michael Martin, and Conswella Phipps concerning the preservation email and the Asset Forfeiture Division meeting.

43. I was a participant in that text-message exchange.

44. I personally received the messages shown in Exhibit D.

45. I understood that the group's references to "he" in those messages refer to Mr. Butera.

46. In that exchange, Ms. Jones stated that some people received an email about preserving emails and not deleting anything.

47. In that exchange, Ms. Jones stated that Mr. Butera said the directive was very broad.

48. In that exchange, Ms. Jones stated that Mr. Butera said the directive went to several people.

49. In that exchange, Ms. Jones stated that she did not receive the email.

50. In that exchange, Mr. Martin stated that he did not receive the email.

51. Conswella Phipps was also a participant in the exchange.

52. I do not recall Mrs. Phipps stating in that exchange that she received the preservation email.

53. I do not recall Ms. Jones, Mr. Martin, or Mrs. Phipps telling me before January 1, 2025 that they had received any later litigation-hold or preservation email concerning me, my EEOC Charge, or my employment-related claims.

54. The screenshot in Exhibit D fairly and accurately depicts the text messages as I received them.

**Exhibit E: October 8, 2024 Text Messages Concerning Reported Deletion of Files**

55. Attached as Exhibits E-1 through E-6 are true and correct copies of screenshots from a group text-message exchange on or about October 8, 2024 concerning reported deletion of files and related electronic case records.

56. I was a participant in that group text-message exchange.

57. I personally received the messages shown in Exhibits E-1 through E-6.

58. A partially redacted copy of these messages was previously provided to the EEOC.

59. I did not alter the substance of the text messages shown in Exhibits E-1 through E-6.

60. The screenshots in Exhibits E-1, E-2, E-4, and E-6 fairly and accurately depict the text messages as I received them.

61. Exhibits E-3 and E-5 are enlarged images prepared from screenshots in the same text-message exchange for readability.

62. The enlarged images in Exhibits E-3 and E-5 fairly and accurately depict the portions of the screenshots from which they were prepared.

63. Exhibit E-5 was redacted only to remove a phone number, and the remainder of the image remains in the same condition as it appeared in the image I received.

64. During my employment and communications with coworkers, certain nicknames were used in text messages and conversations.

65. I understood those nicknames based on my personal participation in communications with the group and prior use of those nicknames.

66. In the attached messages, "McGruff" refers to Alexis Mitchell, an Assistant District Attorney assigned to the Asset Forfeiture Division.

67. In the attached messages, "Bunny" refers to Cornelia Hartman, an Assistant District Attorney assigned to the Asset Forfeiture Division.

68. In the attached messages, "Oatmeal" refers to Shannon Burkhart, a Paralegal assigned to the Asset Forfeiture Division.

69. In the attached messages, "Barbie" refers to Kristal Snelson, an Assistant District Attorney assigned to the Asset Forfeiture Division.

70. In the attached messages, "Enron" refers to Michael Butera, an Assistant District Attorney and the Division Chief of the Asset Forfeiture Division.

71. Attached as Exhibit E-1 is a true and correct copy of text messages reporting that Shannon Burkhart could not find a file or item.

72. Attached as Exhibit E-1 is also a true and correct copy of text messages reporting that Mrs. Mitchell told Ms. Burkhart to check e-file to locate another copy of the missing or deleted item.

73. Attached as Exhibit E-2 is a true and correct copy of text messages showing an electronic case record shared in the group exchange.

74. Attached as Exhibit E-3 is an enlarged image of the electronic case record shown in Exhibits E-1 and E-2, prepared for readability.

75. Attached as Exhibit E-4 is a true and correct copy of text messages reporting that Shannon Burkhart stated she accidentally deleted an item while deleting files after receiving Cornelia Hartman's cases.

76. Attached as Exhibit E-5 is an enlarged image of the electronic case record shown in Exhibit E-4, prepared for readability.

77. Attached as Exhibit E-6 is a true and correct copy of text messages concerning potential IT recovery of deleted information.

78. In the October 8, 2024 text-message exchange, Alyssa Rios reported that Shannon Burkhart stated she had found an item and had accidentally deleted it while deleting files after receiving Cornelia Hartman's cases.

79. In the same exchange, Mrs. Rios reported that Mrs. Mitchell told Ms. Burkhart that IT could recover deleted information.

80. In the same exchange, Mrs. Rios reported that Ms. Burkhart should call IT if the file could not be found in e-file.

81. Alyssa Rios's office was located immediately next door to Alexis Mitchell's office.

82. Based on that office location and the text messages I received, I understood Mrs. Rios to be reporting information she heard from or near Mrs. Mitchell's office.

83. Michael Martin shared or discussed images of an electronic case record in the same group text-message exchange.

84. Based on my review of the messages and the images shared in that exchange, I understood Mr. Martin to be connecting the reported deletion issue to the electronic case record shown in Exhibits E-4 and E-5.

85. I understand the "Hartman, Cornelia (2)" designation shown in the electronic case record to refer to cases associated with Assistant District Attorney Cornelia Hartman and assigned to the paralegal responsible for Ms. Hartman's cases.

86. Before my termination, I was the paralegal assigned to Ms. Hartman and handled cases associated with that designation.

87. Based on the messages and electronic case record shown in the screenshots, the files or case records associated with "Hartman, Cornelia (2)" appear to have later been handled by Shannon Burkhart after my termination.

**Communications with Michael Martin after termination**

88. After my termination, Michael Martin told me that Michael Butera asked him at least once whether he was still communicating with me.

89. To the best of my knowledge, I do not have a text message or email documenting that conversation with Mr. Martin.

90. Paragraph 88 is based on what Mr. Martin told me, not on my personal knowledge of any conversation between Mr. Martin and Mr. Butera.

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on this 8th day of September, 2026.

Tiffany Nicole Dixon
Plaintiff Pro Se
12313 Winebrook Drive
Pearland, Texas 77584
Telephone: (281) 450-4674
Telephone: (737) 382-0187
Tdixon2313@yahoo.com