**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **TIFFANY NICOLE DIXON** | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:26-cv-04418** |
| | § | |
| **HARRIS COUNTY, TEXAS** | § | |
| Defendant. | § | |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT LIMITED EXPEDITED DISCOVERY (DOC. 18) AND RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY (DOC. 20)**

**TABLE OF CONTENTS**

TABLE OF CONTENTS....1

TABLE OF AUTHORITIES....3

I. NATURE AND STAGE OF THE PROCEEDING....5

II. RELEVANT FACTS....5

III. ISSUES PRESENTED AND STANDARDS OF REVIEW....6

IV. SUMMARY OF ARGUMENT....7

V. ARGUMENT....8

A. Defendant Did Not Satisfy the Conference Requirement for Its Motion for Protective Order to Stay Discovery....8

B. Defendant Has Not Shown That a Blanket Protective Order Is Necessary....10

1. A pending dispositive motion permits a stay in the Court's discretion but does not make a stay automatic....10

2. Rule 26(c) requires Defendant to establish good cause for the protective order it seeks ........ 11

3. A temporary stay rationale does not justify outright denial of Doc. 18 ........ 13

C. Defendant's Remaining Arguments Do Not Independently Defeat Plaintiff's Request for Limited Preservation Discovery ........ 16

1. The existence of litigation holds and possible IT recovery does not establish adequate preservation or defeat good cause ........ 17

2. Rock v. Huffco Gas & Oil Co. does not establish that the October 2024 communications cannot support limited discovery ........ 21

3. Defendant mischaracterizes the October 2024 communications as "triple hearsay" ........ 23

4. The reported employee statements present potential independent bases for admissibility, and discovery may eliminate the hearsay layers Defendant identifies ........ 24

5. The requested preservation discovery is relevant to the claims and to the availability of relevant evidence ........ 26

6. Defendant's own statements leave unresolved questions concerning witness-communication instructions ........ 30

VI. REQUESTED RELIEF ........ 32

VII. CONCLUSION & PRAYER ........ 33

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **TIFFANY NICOLE DIXON** | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:26-cv-04418** |
| | § | |
| **HARRIS COUNTY, TEXAS** | § | |
| Defendant. | § | |

## TABLE OF AUTHORITIES

### CASES

*Barrie v. Nueces Cnty. Dist. Attorney's Off.*,
No. 2:17-CV-00204, 2017 WL 11713691, at *2
(S.D. Tex. Nov. 13, 2017) .......... 10

*EEOC v. SkyWest Airlines, Inc.*,
No. 25-10491, slip op. at 5–6
(5th Cir. July 9, 2026) .......... 25

*Guzman v. Jones*,
804 F.3d 707, 713 (5th Cir. 2015) .......... 29

*Heritage Bank v. Redcom Labs., Inc.*,
250 F.3d 319, 329 (5th Cir. 2001) .......... 17

*In re Terra Int'l, Inc.*,
134 F.3d 302, 306 (5th Cir. 1998) .......... 7, 11–12

*Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*,
901 F.2d 404, 435–36 (5th Cir. 1990) .......... 13

*Martinez v. Bally's La., Inc.*,
244 F.3d 474, 476 (5th Cir. 2001) .......... 17

*MetroplexCore, LLC v. Parsons Transp., Inc.*,
743 F.3d 964, 978–79 (5th Cir. 2014) .......... 25

*MODE Global, LLC v. Kuriger*,
350 F.R.D. 271, 274–76 (N.D. Tex. 2025) ........................................ 15

*Petrus v. Bowen*,
833 F.2d 581, 583 (5th Cir. 1987) ........................................ 10, 13–14, 33

*Rock v. Huffco Gas & Oil Co.*,
922 F.2d 272, 280, 283 (5th Cir. 1991) ........................................ 21–23, 25

*St. Louis Grp., Inc. v. Metals & Additives Corp.*,
275 F.R.D. 236, 239–40 (S.D. Tex. 2011) ........................................ 7, 16, 30

*United States v. Garrett*,
571 F.2d 1323, 1326 n.3 (5th Cir. 1978) ........................................ 11

**RULES AND REGULATIONS**

29 C.F.R. § 1602.31 ........................................ 30

Fed. R. Civ. P. 26(b)(1) ........................................ 22, 26, 30

Fed. R. Civ. P. 26(c) ........................................ 5–6, 11–13

Fed. R. Civ. P. 37(e) ........................................ 20

Fed. R. Civ. P. 72(a) ........................................ 7

Fed. R. Evid. 801(d)(2)(D) ........................................ 24–25

Fed. R. Evid. 803(1) ........................................ 25

S.D. Tex. L.R. 7.1(D) ........................................ 6, 8

**OTHER AUTHORITIES**

Senior Judge Sim Lake, Court Procedures § 5(C)
(Dec. 29, 2025) ........................................ 6, 8

## I. NATURE AND STAGE OF THE PROCEEDING

1. On July 15, 2026, Defendant Harris County filed its Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6). (Doc. 9).

2. On September 8, 2026, Plaintiff filed her Motion for Leave to Conduct Limited Expedited Discovery Regarding Preservation of Evidence, Witness Communications, and Potential Spoliation. (Doc. 18).

3. On September 29, 2026, Defendant filed Doc. 20. That filing serves both as Defendant's response opposing Doc. 18 and as an affirmative motion under Rule 26(c) seeking a protective order staying all discovery until resolution of Doc. 9. Defendant also asks the Court to deny Doc. 18 outright.

4. Also on September 29, 2026, the Magistrate Judge issued the Memorandum and Recommendation and Order in Doc. 21. The Magistrate Judge recommends that Defendant's Motion to Dismiss be granted and that this action be dismissed with prejudice; separately, Doc. 21 orders that Doc. 18 is denied as moot. The recommendation concerning dismissal remains subject to review by the District Court. Doc. 21 does not expressly resolve Defendant's separate request in Doc. 20 for a protective order staying all discovery.

## II. RELEVANT FACTS

5. Plaintiff's request for limited expedited discovery arises from specific preservation and witness-communication concerns reflected in the existing record. Defendant has represented that litigation holds were issued on or about September 9, 2024 and July 7, 2026. The existing record also includes a September 2024 preservation-related meeting, contemporaneous communications reflecting uncertainty regarding distribution of preservation instructions, and October 2024 communications reporting deletion activity after the September 2024 preservation directive. See Doc. 18 ¶¶ 19–27, 31–33; Doc. 18, Exs. B-5, C, D, E-1 through E-6.

6. The October 2024 communications also refer to case work associated with Assistant District Attorney Cornelia Hartman, whose cases Plaintiff handled as the assigned paralegal before her termination, and to possible IT recovery of deleted information. Plaintiff seeks limited discovery concerning preservation implementation, relevant technical records, the handling of the files implicated by the October 2024 communications, including Hartman-related case work, and whether reportedly deleted material remains available or recoverable. See Doc. 18 ¶¶ 24–27; Dixon Decl. in Supp. of Doc. 18 ¶¶ 77–87; Doc. 18, Exs. E-1 through E-6.

7. Separately, during the September 1, 2026 conference, Defendant's counsel described Harris County's practices concerning communications between current employees and a former employee involved in litigation and acknowledged that counsel would need to "do some digging" concerning what instructions may have been given during Plaintiff's EEOC proceeding. Plaintiff seeks only nonprivileged factual information concerning the existence, timing, recipients, scope, and content of any such instructions. See Reply Dixon Decl. ¶¶ 7–8.

## III. ISSUES PRESENTED AND STANDARDS OF REVIEW

8. The first issue is whether Defendant satisfied the conference requirement applicable to the protective order it now seeks. Southern District of Texas Local Rule 7.1(D) and Judge Lake's procedures require a party seeking relief on an opposed nondispositive discovery motion to confer in good faith concerning disposition of the matter before presenting it to the Court. S.D. Tex. L.R. 7.1(D); Senior Judge Sim Lake, Court Procedures § 5(C), at 4–5 (Dec. 29, 2025).

9. The second issue is whether Defendant has established good cause under Rule 26(c) for the blanket protective order staying all discovery that it requests. Rule 26(c) permits protective relief upon a showing of good cause. The movant bears the burden of demonstrating the necessity of the requested order through a particular and specific factual showing rather than

generalized or conclusory assertions. *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).

10. The third issue is whether Plaintiff has shown good cause for the limited expedited discovery requested in Doc. 18 and, if the Court determines that discovery should temporarily be deferred, whether Doc. 18 should be denied outright or preserved for later merits consideration. The Court has discretion regarding the timing of discovery, including discovery sought before the ordinary discovery process. In determining good cause for expedited discovery, courts consider the reasonableness and purpose of the request, its breadth and tailoring, burden on the responding party, and timing. See *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239–40 (S.D. Tex. 2011). To the extent Plaintiff requests that the District Court set aside the portion of Doc. 21 denying Doc. 18 as moot, review of that nondispositive order is governed by Federal Rule of Civil Procedure 72(a), under which the District Court must modify or set aside any portion of the order that is clearly erroneous or contrary to law.

## IV. SUMMARY OF ARGUMENT

11. Defendant asks the Court not only to stay all discovery pending resolution of its Motion to Dismiss, but also to deny Plaintiff's narrowly tailored Motion for Leave to Conduct Limited Expedited Discovery (Doc. 18) outright. Plaintiff opposes that broader relief. Defendant also did not confer with Plaintiff concerning the blanket stay it ultimately requested before filing Doc. 20. Defendant has not made a particularized showing that Plaintiff's limited preservation-related discovery would impose undue burden or expense, and the existence of litigation holds or preservation instructions does not, by itself, establish their scope, implementation, or compliance. Although the Magistrate Judge's September 29, 2026 Memorandum and Recommendation and Order (Doc. 21) recommends dismissal of this action and orders Doc. 18 denied as moot, Plaintiff will timely object to Doc. 21. If the Court declines to adopt the

dismissal recommendation and sets aside the portion of Doc. 21 denying Doc. 18 as moot, Plaintiff respectfully requests that Doc. 18 be preserved for merits consideration, subject to any temporary discovery stay the Court determines appropriate. At most, Defendant's timing argument supports temporary deferral of discovery, not permanent denial of Doc. 18.

## V. ARGUMENT

### A. Defendant Did Not Satisfy the Conference Requirement for Its Motion for Protective Order to Stay Discovery

12. Defendant's affirmative Motion for Protective Order does not satisfy the applicable conference requirements. Southern District of Texas Local Rule 7.1(D) requires an opposed nondispositive motion to state that the movant "has conferred with the respondent" and that the parties "cannot agree about the disposition of the motion." S.D. Tex. L.R. 7.1(D). Judge Lake's procedures likewise require counsel seeking relief concerning a discovery dispute to confer in good faith in an effort to resolve the matter before presenting the dispute to the Court. See Senior Judge Sim Lake, Court Procedures § 5(C), at 4–5 (Dec. 29, 2025).

13. The parties' September 1, 2026 conference did not concern Defendant's present request for a protective order staying all discovery. That conference concerned Plaintiff's request for limited expedited discovery before the Rule 26(f) conference. Defendant's own Certificate of Conference confirms the limited subject of that discussion, stating that counsel conferred with Plaintiff "regarding her request for expedited discovery" and informed Plaintiff that Defendant opposed "such request" because its Motion to Dismiss remained pending. See Doc. 20, Certificate of Conference, at 7. The Certificate does not state that Defendant proposed a stay of all discovery, asked whether Plaintiff would agree to such a stay, or conferred with Plaintiff concerning a contemplated motion for protective order.

14. Nor did Defendant confer with Plaintiff about the protective-order relief after the

September 1 conference. To the contrary, Defendant's written and oral statements that day contemplated proceeding through the ordinary Rule 26(f) process if the Motion to Dismiss remained unresolved. At that time, counsel had advised Plaintiff in writing that October 8, 2026 was the Rule 26(f) deadline and that she would contact Plaintiff "in the coming weeks" to schedule discussion of the parties' Joint Discovery Case Management Plan ("JDCMP"). See Doc. 18, Ex. B-2. During the telephone conference, counsel further stated that, if the Court had not ruled on the Motion to Dismiss within a couple of weeks, Defendant would reach out to schedule the Rule 26(f) conference, offered to prepare the initial draft of the JDCMP for Plaintiff's review and proposed revisions, and explained that the parties would confer and submit a joint document to the Court. Counsel reiterated at the conclusion of the call that Defendant would "get the ball rolling on the JDCMP stuff, the Rule 26 conference" if no ruling issued. Plaintiff recorded and preserved the September 1, 2026 telephone conference. See Reply Dixon Decl. ¶¶ 2, 6, 10. The Clerk subsequently canceled the October 29, 2026 Initial Scheduling Conference on October 2, 2026, after Defendant had already filed Doc. 20. See Doc. 22. That later cancellation does not alter the scope of the September 1 conference or establish that the parties conferred concerning Defendant's subsequently filed request for a blanket protective order.

15. Doc. 20 therefore presented a distinct discovery dispute that had not been the subject of the parties' September 1 conference: whether all discovery should be stayed pending resolution of Defendant's Motion to Dismiss. Because Defendant did not confer regarding the disposition of that relief before filing Doc. 20, the September 1 conference concerning Doc. 18 does not satisfy the conference requirement for Doc. 20.

16. Defendant's failure to confer regarding the relief actually sought in Doc. 20 provides

an independent basis to deny its Motion for Protective Order. In all events, even if the Court reaches the merits notwithstanding that failure, Defendant has not established entitlement to the blanket stay it seeks for the reasons set forth below.

**B. Defendant Has Not Shown That a Blanket Protective Order Is Necessary**

**1. A pending dispositive motion permits a stay in the Court's discretion but does not make a stay automatic**

17. Plaintiff does not dispute that the Court has discretion to stay discovery while resolving a preliminary issue that may dispose of the action. *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987), states that a trial court has "broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." Defendant's other cited authority is similarly discretionary, recognizing that a stay "may be appropriate" where resolution of a motion to dismiss could eliminate the need for discovery and thereby conserve time and expense. See *Barrie v. Nueces Cnty. Dist. Attorney's Off.*, No. 2:17-CV-00204, 2017 WL 11713691, at *2 (S.D. Tex. Nov. 13, 2017). See Reply Ex. D. Nothing in those authorities establishes that the filing of a dispositive motion automatically stays discovery.

18. *Petrus* illustrates the distinction. There, the Fifth Circuit upheld the district court's decision to defer discovery because nothing the plaintiff could have learned through discovery would have affected resolution of the pending Rule 12(b)(6) issue. *Petrus*, 833 F.2d at 583. The decision therefore recognizes the Court's authority to defer discovery while a threshold legal issue is resolved; it does not create a rule that every pending Rule 12(b)(6) motion entitles the movant to a blanket protective order.

19. Plaintiff likewise does not contend that the limited discovery requested in Doc. 18 will determine whether this action was timely filed within the ninety-day period. See Doc. 20 ¶¶ 12–13. But that is not the purpose for which Plaintiff sought the discovery. Doc. 18 seeks limited

information concerning preservation measures, potentially deleted or altered ESI, witness-communication instructions, and the handling of evidence that may become relevant if this action proceeds.

20. Accordingly, the fact that the requested discovery will not affect resolution of Doc. 9 establishes, at most, that the Court may defer discovery while that threshold issue is resolved. It does not itself establish that Defendant is entitled to a blanket stay under Rule 26(c), nor does it establish that Plaintiff's separate request for limited preservation-related discovery should be denied outright rather than preserved for consideration if the action continues.

**2. Rule 26(c) requires Defendant to establish good cause for the protective order it seeks**

21. Because Defendant seeks affirmative relief under Rule 26(c), **Defendant bears the burden of establishing good cause** for the protective order it requests. Rule 26(c) authorizes a protective order upon a showing of good cause to protect a party or person from, among other things, undue burden or expense. The Fifth Circuit has explained that "[t]he burden is upon the movant to show the necessity of its issuance," which requires a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

22. Defendant has not made that particularized showing here. Doc. 20 asserts that Defendant should not be required to "shoulder the burden and expense of discovery" while its Motion to Dismiss remains pending and later characterizes discovery as imposing "an undue burden and unnecessary expense." See Doc. 20 ¶¶ 11, 13. But Defendant does not identify any estimated cost of compliance, anticipated volume of responsive material, number of custodians implicated by Plaintiff's limited preservation requests, hours of employee or attorney time that

would be required, technical difficulty associated with retrieving the requested preservation information or system records, or other concrete circumstance demonstrating undue burden. Nor does Defendant identify a particular category of the discovery requested in Doc. 18 and explain why responding to that category would be oppressive or disproportionately expensive. More specifically, Doc. 18 seeks nonprivileged preservation facts, targeted technical and system records, and written witness-contact instructions, yet Doc. 20 does not identify which of those categories is supposedly unduly burdensome or explain what burden responding to any particular category would impose.

23. Defendant's omission is particularly significant because the relief it seeks extends beyond postponement of the limited discovery requested in Doc. 18. Defendant asks the Court to stay **all** discovery until resolution of Doc. 9. See Doc. 20 ¶ 13. A blanket stay necessarily reaches discovery that has not yet been served or specifically evaluated for burden. Yet Defendant offers no particularized facts concerning the burden of ordinary discovery generally and no factual basis from which the Court could assess why a complete prohibition on discovery, rather than narrower or tailored relief, is necessary to protect Defendant from the harms identified in Rule 26(c).

24. *In re Terra* does not establish that an affidavit or a particular form of evidence is invariably required to obtain a protective order. It does, however, reject protective relief resting **only** upon generalized assertions that could be made in a broad class of cases. 134 F.3d at 306. There, the movant's unsupported assertion concerning potential witness influence was insufficient because it lacked the particular and specific factual showing required by Rule 26(c). *Id.* Defendant's assertion here that discovery will entail burden and expense in a case that may ultimately be dismissed likewise does not, without more, demonstrate why the particular

discovery at issue would impose an undue burden or why the blanket scope of the requested stay is necessary.

25. Defendant's reliance on *Landry v. Air Line Pilots Ass'n International AFL-CIO*, 901 F.2d 404, 435–36 (5th Cir. 1990), does not eliminate that requirement. In *Landry*, the Fifth Circuit expressly concluded that the defendants had made a prima facie showing that the discovery at issue would be unduly burdensome and expensive. The defendants relied not merely on the existence of dispositive motions, but also on the nature and timing of the requested depositions, the assertion that the pending summary-judgment motions could be decided on undisputed facts already before the court, and circumstances they argued reflected improper timing of the depositions. *Id.* at 435–36. The Fifth Circuit then held that those defendants had met their initial burden under Rule 26(c). *Id.* at 436. Here, by contrast, Defendant identifies no comparable facts concerning the actual burden associated with Plaintiff's preservation-related request or with the broader universe of discovery Defendant seeks to stay.

26. Plaintiff does not contend that the pending Motion to Dismiss is irrelevant to the Court's exercise of discretion. As discussed above, it is a legitimate factor the Court may consider under *Petrus*. The question under Rule 26(c), however, is whether Defendant has justified the breadth of the relief it actually seeks. On the present showing, its generalized invocation of burden, expense, and the possibility of dismissal does not supply the particularized factual basis required for an order staying all discovery.

**3. A temporary stay rationale does not justify outright denial of Doc. 18**

27. Defendant's requested relief conflates two distinct questions: whether discovery should proceed while Doc. 9 remains unresolved, and whether Plaintiff's Motion for Leave to Conduct Limited Expedited Discovery should be extinguished altogether. Defendant asks the

Court to stay discovery "until the resolution" of its Motion to Dismiss, but its proposed order goes further by separately directing that Doc. 18 be **DENIED**. See Doc. 20 ¶ 13; Doc. 20-1 ¶¶ 1–2. A temporary reason for postponing discovery does not, without more, supply a basis for permanently disposing of Plaintiff's preservation-related request.

28. As discussed above, *Petrus v. Bowen* permits a court to defer discovery while resolving a preliminary issue that may dispose of the action. 833 F.2d 581, 583 (5th Cir. 1987). Plaintiff does not dispute that principle. But *Petrus* approved the **deferral** of discovery because nothing the plaintiff could have learned would have affected resolution of the pending Rule 12(b)(6) issue; it did not hold that the pendency of a dispositive motion requires all potentially available proceedings to be terminated. Indeed, after affirming dismissal as to the named defendants, the Fifth Circuit remanded so that the *pro se* plaintiff could seek amendment to name a proper defendant. *Id.* Thus, the relevant distinction is between postponing proceedings while a threshold issue is resolved and finally foreclosing proceedings that may remain appropriate if the action continues.

29. That distinction is particularly important here because Doc. 18 concerns preservation-related information that may matter only if this action proceeds. Plaintiff does not ask the Court to authorize discovery for the purpose of deciding Doc. 9. Since Doc. 21 has now denied Doc. 18 as moot based upon the accompanying recommendation that the action be dismissed, Plaintiff will timely challenge that ruling. If the District Court declines to adopt the dismissal recommendation and sets aside the portion of Doc. 21 denying Doc. 18 as moot, the narrower course is to hold Doc. 18 in abeyance during any temporary discovery stay so that the requested limited discovery may be considered if the action proceeds, rather than deny the motion because of a temporary circumstance that may cease to exist.

30. Defendant's own cited expedited-discovery authority demonstrates that discovery relief need not be treated as all-or-nothing. In *MODE Global, LLC v. Kuriger*, the court evaluated the requested expedited discovery individually and granted the motion in part, authorizing those interrogatories and requests for production it found sufficiently narrow and not unduly burdensome while declining broader requests. 350 F.R.D. 271, 274–76 (N.D. Tex. 2025). *MODE Global* does not require the Court to authorize Plaintiff's requests here, but it illustrates that concerns regarding breadth, burden, or timing may be addressed through tailored relief rather than wholesale denial.

31. Defendant's own September 1 meet-and-confer position further supports that distinction. During the recorded conference, Defendant's counsel stated that Harris County would not agree to *early* discovery, but acknowledged that Plaintiff could later propound interrogatories concerning preservation and that Defendant would review and respond to those requests through the ordinary discovery process. See Reply Dixon Decl. ¶¶ 5–6. Defendant's stated objection at that time was therefore directed principally to the timing of the discovery, not to the proposition that preservation-related discovery could never properly occur. That position is consistent with temporary deferral if the Court determines that a stay is warranted; it does not support outright denial of Doc. 18.

32. Accordingly, even if the Court stays discovery while Doc. 9 remains pending, the scope of the stay should correspond to the reason for imposing it. If the Court declines to adopt the dismissal recommendation, Plaintiff respectfully requests that the Court set aside the portion of Doc. 21 denying Doc. 18 as moot, hold Doc. 18 in abeyance during any remaining stay, and consider it on its merits if this action proceeds. Alternatively, if the Court determines that only some of the discovery requested in Doc. 18 is appropriate, Plaintiff respectfully requests that the Court tailor the authorized discovery rather than deny the motion in its entirety.

**C. Defendant's Remaining Arguments Do Not Independently Defeat Plaintiff's Request for Limited Preservation Discovery**

33. Plaintiff bears the burden of showing good cause for expedited discovery. See *St. Louis Grp.*, 275 F.R.D. at 239–40. That inquiry turns on the reasonableness of the request under the circumstances, including the purpose of the discovery, its breadth, the burden on the responding party, whether the request is narrowly tailored, and how far in advance of ordinary discovery it is sought. *Id.* at 240.

34. Those considerations favor Plaintiff's request. Doc. 18 serves a legitimate preservation purpose: determining whether relevant evidence remains available, whether preservation measures were implemented and followed, whether potentially relevant ESI was deleted, altered, moved, overwritten, or restored, and what instructions were given concerning witness communications. See Doc. 18 ¶¶ 18, 44–49. The requested discovery is confined to preservation implementation, specified technical and file-activity records, witness-communication instructions, and the handling of identified files and related ESI; it does not seek full merits discovery, broad depositions, or wholesale production of Defendant's employment records. See *id.* ¶¶ 45–49, 50–63. Much of the information sought is uniquely within Defendant's possession or control, while logs, metadata, backup information, restoration records, and similar technical evidence may become unavailable or more difficult to reconstruct with the passage of time. *Id.* ¶¶ 44, 46. Against that need, Defendant has offered only the generalized burden assertions addressed above, rather than a particularized showing that the limited requests themselves would impose undue burden. Considered together, the *St. Louis Group* factors support good cause; Defendant's remaining arguments concerning the existence of litigation holds, hearsay, and relevance do not independently defeat that showing.

**1. The existence of litigation holds and possible IT recovery does not establish adequate preservation or defeat good cause**

35. Defendant first argues that Plaintiff's own "judicial admissions" contradict her preservation concerns. See Doc. 20 ¶¶ 19–20. That characterization materially overstates what Plaintiff acknowledged. A judicial admission is a formal concession that removes an admitted fact from controversy, and the Fifth Circuit requires such a statement to be deliberate, clear, and unequivocal. *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001); *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001). Even assuming Plaintiff's factual acknowledgments may be treated as judicial admissions, they are conclusive only as to the propositions actually acknowledged. Plaintiff acknowledged only that Defendant represented that litigation holds had been issued, that the record contains evidence that preservation instructions were communicated to at least some personnel, and that an employee reportedly stated that IT might be able to recover deleted information. Plaintiff did not admit that Defendant's preservation measures were adequately implemented, reached every relevant custodian, were complied with, successfully preserved all relevant information, or rendered all deleted information recoverable.

36. The distinction is central to Doc. 18. Plaintiff does not dispute that Defendant represents that litigation holds were issued on or about September 9, 2024 and July 7, 2026, or that Asset Forfeiture Division Chief Michael Butera later discussed a preservation directive with Asset Forfeiture personnel. Those facts establish that some preservation measures existed. They do not establish the scope, implementation, maintenance, or effectiveness of those measures. They do not identify who actually received preservation instructions, which custodians were covered, which systems or accounts were preserved, what categories of information were

included, whether routine deletion or overwriting processes were suspended, or what steps were taken to monitor compliance. Those are among the nonprivileged factual matters Plaintiff seeks to determine through Doc. 18.

37. Indeed, the same evidentiary record on which Defendant relies reflects uncertainty concerning distribution of the September 2024 preservation instructions. In the September 20, 2024 exchange attached as Exhibit D, Dionda Jones stated that some people received an email concerning preservation but that she did not receive it, and Michael Martin likewise stated that he did not. See Dixon Decl. in Supp. of Doc. 18 ¶¶ 42–50; Doc. 18, Ex. D. Their nonreceipt does not establish that Defendant took no preservation measures or that they never received later preservation instructions. It is significant, however, because both worked in Plaintiff's Asset Forfeiture Division and directly with Plaintiff, raising a concrete question whether the September 2024 directive reached all employees with potentially relevant information.

38. The same exchange leaves Mrs. Phipps's receipt of the preservation instructions unresolved. Mrs. Phipps participated in the contemporaneous discussion concerning the preservation email and Mr. Butera's meeting, but did not state in that exchange that she had received the email. Instead, she asked whether Mr. Butera had raised the preservation directive "in the meeting" and expressed surprise when Ms. Jones confirmed that he had. See Doc. 18, Ex. D; Dixon Decl. in Supp. of Doc. 18 ¶¶ 51–54. Plaintiff does not contend that Mrs. Phipps's failure to state that she received the email proves that she did not receive it. The significance is narrower: the contemporaneous exchange itself does not resolve whether she received the preservation email, and her reaction indicates that she did not personally hear the relevant portion of Mr. Butera's meeting discussion concerning compliance with the preservation directive. Thus, neither the preservation email nor the meeting establishes on the present record

that all potentially relevant employees received the same preservation instructions.

39. Defendant's counsel's September 1, 2026 description of the litigation holds further confirms why limited inquiry remains appropriate. During the recorded conference, counsel stated that Harris County had identified "relevant parties" in its litigation-hold letters. See Reply Dixon Decl. ¶ 4. Yet Doc. 20 does not identify those persons, explain the basis for their selection, or establish that all employees with potentially relevant information or system access were included. Nor does it identify whether Jones, Martin, Phipps, investigators, or other potentially relevant personnel (inside or outside of the Asset Forfeiture Division) received preservation instructions. Separately, Doc. 20 does not state whether then-Human Resources Director Elizabeth Stevens, a decisionmaker in Plaintiff's termination, was designated as a relevant party or received preservation instructions. The existence of a litigation hold therefore does not answer the implementation questions Doc. 18 seeks to investigate.

40. Defendant similarly places more weight on the reported IT statement than the record permits. Defendant states that Plaintiff admitted "that IT can pull deleted files." See Doc. 20 ¶ 19. Plaintiff actually reported that Alyssa Rios stated that Alexis Mitchell said, during the October 2024 text message exchange, that "IT can pull deleted stuff somehow" if the missing item could not be located in e-file. See Doc. 18 ¶ 25; Dixon Decl. in Supp. of Doc. 18 ¶¶ 77–82; Doc. 18, Ex. E-6. Plaintiff did not admit that every deleted item remains recoverable, that the particular item at issue was restored, that restoration was ever attempted, that backups containing the information continue to exist, or that deletion, audit, access, backup, or restoration records remain available. Possible recoverability is not equivalent to actual preservation or successful recovery.

41. Nor does possible IT recovery eliminate the need for the requested inquiry. Rule

37(e) expressly makes whether ESI "can be restored or replaced through additional discovery" part of the threshold inquiry concerning allegedly lost ESI. Fed. R. Civ. P. 37(e). Plaintiff does not seek a spoliation sanction through Doc. 18; the Rule is relevant here because it demonstrates that restoration and replacement are factual questions bearing directly on whether information is actually unavailable. Whether information was deleted, whether it can still be restored, whether recovery was attempted, what backup or storage systems may contain it, and whether technical records documenting those events still exist are precisely the matters limited preservation discovery can answer. Defendant therefore cannot rely upon a reported possibility of IT recovery as proof that preservation was adequate while opposing inquiry into whether recovery actually occurred or remains possible.

42. Defendant's present submissions establish, at most, that Defendant represents that preservation measures were undertaken and relies upon a reported statement suggesting that IT may have had some ability to retrieve deleted information. Those representations do not establish that any particular deleted information was actually preserved, remained recoverable, was restored, or is still capable of being restored. Nor was the reported deletion allegation first presented to Defendant in this litigation. Plaintiff's February 12, 2025 Amended Charge expressly alleged that, after the September 2024 preservation directive, Ms. Burkhart was overheard stating that she had deleted multiple items from her computer. See Doc. 1-1 at 9. In Defendant's March 13, 2025 response to Plaintiff's Amended Charge, Defendant stated that there were "no findings of information deleted by Ms. Burkhart relating to this matter at issue" and represented that its response had been prepared after a "preliminary investigation into the facts that are alleged in the Charge." See Reply Ex. E at 9–10.

43. Yet Doc. 20 presents no evidence identifying what inquiry supported Defendant's

2025 "no findings" representation, what custodians, systems, records, or technical data were examined, whether Harris County Universal Services or other IT personnel reviewed deletion, audit, access, backup, or restoration records, whether recovery was attempted, or whether any follow-up preservation measures were taken. During the September 1, 2026 conference, current counsel further stated that she had no personal knowledge of anyone deleting information after the September 2024 litigation hold was issued. See Reply Dixon Decl. ¶ 11. The present record therefore leaves unresolved both the basis for Defendant's 2025 representation and whether the reportedly deleted information was preserved, restored, or remains recoverable. Those unresolved factual questions reinforce, rather than defeat, the need for the limited preservation discovery requested in Doc. 18.

**2. *Rock v. Huffco Gas & Oil Co.* does not establish that the October 2024 communications cannot support limited discovery**

44. Defendant relies on *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272 (5th Cir. 1991), to argue that the October 2024 communications should receive diminished weight because they contain inadmissible hearsay within hearsay. See Doc. 20 ¶¶ 21–23. But *Rock* addressed a materially different procedural question. The case arose on summary judgment, where the plaintiffs were required to produce admissible evidence sufficient to create a genuine factual dispute concerning the essential elements of their negligence claims. *Rock*, 922 F.2d at 283. The Fifth Circuit affirmed summary judgment after concluding that the plaintiffs' material evidence offered to prove how the alleged accidents occurred was inadmissible hearsay. *Id.* Defendant therefore invokes an evidentiary ruling made at the merits stage to oppose a request for limited discovery designed to determine what primary evidence exists.

45. The factual circumstances in *Rock* were also different. The substantive descriptions of the alleged accidents originated with Rock himself and were then recorded by Gardner and

Christian in accident reports, even though neither had firsthand knowledge of the accident descriptions supplied by Rock. The Fifth Circuit therefore characterized the recordation of Rock's statements as a "classic" hearsay-within-hearsay problem and separately noted evidence raising concerns about Rock's motive to fabricate the underlying accounts. *Id.* at 280. Here, Plaintiff did not originate the reported deletion allegation. Rather, the record reflects that Alyssa Rios reported that she personally overheard Shannon Burkhart speak to Alexis Mitchell concerning Burkhart's own handling of an item and broader deletion of files. See Doc. 18 ¶ 24; Dixon Decl. in Supp. of Doc. 18 ¶¶ 78–82.

46. That distinction does not mean Mrs. Rios personally witnessed whether any deletion actually occurred, and Plaintiff does not contend otherwise. Mrs. Rios's firsthand knowledge concerns the conversation she reported hearing. Plaintiff, in turn, does not ask the Court at this stage to find that Ms. Burkhart deleted relevant evidence, that spoliation occurred, or that the October 2024 text messages are themselves admissible substantive proof of either proposition. Doc. 18 expressly states that Plaintiff seeks limited discovery to determine whether relevant information was deleted or altered, whether technical records document such activity, whether IT or Harris County Universal Services became involved, whether restoration occurred or remains possible, and how potentially relevant files and ESI were handled after preservation obligations arose. See Doc. 18 ¶ 27.

47. That procedural distinction matters under Rule 26. Rule 26(b)(1) expressly provides that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Thus, even if the October 2024 text messages themselves ultimately present evidentiary issues, *Rock* does not establish that the events and information identified in those messages are beyond discovery. At most, an admissibility concern may affect the weight assigned to the communications as substantive proof. It does not convert a specific

report of potentially relevant deletion activity into a subject that cannot be investigated through otherwise relevant and proportional discovery.

48. Nor are the October 2024 text messages Plaintiff's "sole support" for seeking limited expedited discovery, as Defendant asserts. See Doc. 20 ¶¶ 21, 23. Plaintiff also presented the September 2024 preservation-related meeting transcript, evidence concerning distribution of the preservation email, Defendant's representations concerning its litigation holds, and evidence identifying particular custodians, systems, and preservation questions. Defendant's *Rock* argument therefore does not eliminate the broader factual basis for Doc. 18 even if the Court assigns reduced evidentiary weight to the October 2024 text messages.

### 3. Defendant mischaracterizes the October 2024 communications as "triple hearsay"

49. Defendant's characterization of the October 2024 deletion communication as "triple hearsay" rests on a description that does not match the record Plaintiff submitted. Defendant states that Mrs. Rios was "reporting what [Mrs. Mitchell] relayed about what [Ms. Burkhart] said." See Doc. 20 ¶ 21. But Doc. 18 describes Mrs. Rios as reporting that she **overheard Ms. Burkhart speak directly to Mrs. Mitchell** concerning Ms. Burkhart's own handling and deletion of files. See Doc. 18 ¶ 24; Dixon Decl. in Supp. of Doc. 18 ¶¶ 78–82. The record therefore does not describe Mrs. Mitchell later repeating Ms. Burkhart's statement to Mrs. Rios. Mrs. Mitchell was the recipient of the reported statement, not an intermediate declarant through whom the statement passed before reaching Mrs. Rios.

50. Accordingly, if Mrs. Rios's written report were ultimately offered for the truth of the reported deletion, the present record identifies at most two potential hearsay inquiries: (1) Ms. Burkhart's underlying statement concerning her own conduct and (2) Mrs. Rios's written report of the statement she heard. Defendant's asserted third layer, a supposed repetition by Mrs.

Mitchell to Mrs. Rios, does not appear in Plaintiff's evidence. The separate IT-recovery statement is similar: Plaintiff's evidence reflects that Mrs. Mitchell herself stated that IT could recover deleted information and that Mrs. Rios reported that statement. See Dixon Decl. in Supp. of Doc. 18 ¶¶ 77–82. Plaintiff's receipt and preservation of Mrs. Rios's text message does not create another hearsay layer; **Plaintiff was the recipient** of the communication, not an additional declarant repeating a separate out-of-court assertion.

51. Defendant's treatment of the October 2024 communications is also internally inconsistent. In arguing that Plaintiff's preservation concerns are contradicted by her own supposed "judicial admissions," Defendant affirmatively relies on the reported statement that "IT can pull deleted files." See Doc. 20 ¶¶ 19–20. Only paragraphs later, Defendant characterizes the October 2024 communications as unreliable hearsay warranting "diminished weight, if any at all." See *id.* ¶¶ 21–23. Defendant may advance alternative evidentiary arguments, but its treatment of the **same** communication should remain consistent with the limited purpose for which the evidence is offered here. Defendant cannot rely on Mrs. Rios's report of Mrs. Mitchell's IT statement as sufficiently reliable to undermine Plaintiff's preservation concerns by suggesting recoverability, while simultaneously treating the same reporting mechanism as too unreliable to justify limited inquiry into whether deletion occurred, whether recovery was attempted, or whether recovery remains possible. As explained above, Plaintiff did not admit that any particular deleted information was actually recovered or remains recoverable.

**4. The reported employee statements present potential independent bases for admissibility, and discovery may eliminate the hearsay layers Defendant identifies**

52. Defendant's assertion that Plaintiff has identified no potential evidentiary basis for any layer of the communication is too categorical. Ms. Burkhart's underlying statement presents at least a potential basis for treatment as an opposing-party statement under Rule 801(d)(2)(D),

which excludes from hearsay a statement offered against an opposing party that "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). See *MetroplexCore, LLC v. Parsons Transp., Inc.*, 743 F.3d 964, 978–79 (5th Cir. 2014). Here, Ms. Burkhart reportedly spoke while employed by Defendant about her own handling of Harris County case files after receiving reassigned case work—all while an active preservation directive was in effect. If the required foundation establishes that the statement concerned work within the scope of her employment, Rule 801(d)(2)(D) may apply. Plaintiff does not ask the Court to decide that evidentiary question now; discovery may clarify the necessary foundation.

53. The Fifth Circuit's recent decision in *EEOC v. SkyWest Airlines, Inc.* identifies another potential evidentiary route for contemporaneous workplace text messages. No. 25-10491, slip op. at 5–6 (5th Cir. July 9, 2026). See Reply Ex. C. There, the Fifth Circuit held that text messages qualified as present-sense impressions under Rule 803(1) where the declarant testified that they were "instant, realtime" communications describing events as they occurred. The court relied upon *Rock* itself in explaining the reliability associated with statements made while or immediately after an event is perceived. *Id.* Plaintiff does not ask the Court to determine that Mrs. Rios's messages satisfy Rule 803(1) on the present record. But if the necessary foundation establishes that she sent the messages while or immediately after perceiving the reported events, *SkyWest* demonstrates that the text-message layer is not categorically inadmissible. The precise timing and circumstances surrounding Mrs. Rios's messages are matters that may be developed through discovery.

54. More importantly, the evidentiary layers Defendant identifies may be eliminated or substantially reduced as discovery develops. Mrs. Rios may provide testimony concerning what she personally heard without requiring her text-message report to serve as the evidentiary vehicle

for establishing the conversation. Ms. Burkhart and Mrs. Mitchell may likewise provide testimony concerning the missing item, the reported deletion, any search of e-file, any contact with IT or Universal Services, and any attempted recovery. And the limited discovery Plaintiff presently requests may identify objective deletion logs, audit records, access histories, file-activity records, backups, restoration records, or other ESI capable of independently establishing what occurred without reliance on any reported statement at all. The October 2024 communications function as a lead to primary evidence, and the requested discovery is the mechanism through which the parties can determine whether that primary evidence exists.

55. Defendant's hearsay objection may bear upon the weight ultimately assigned to the October 2024 communications, but it does not establish that limited discovery concerning the reported deletion is improper. Rule 26(b)(1) expressly provides that information within the permissible scope of discovery "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Plaintiff does not ask the Court presently to find that Ms. Burkhart deleted relevant evidence or that spoliation occurred. Plaintiff seeks limited discovery to determine whether the reported deletion occurred, what information was affected, whether that information remains available or recoverable, and whether any affected material is relevant to the parties' claims or defenses. An unresolved evidentiary objection to the communications that first identified those questions does not foreclose discovery directed toward answering them.

**5. The requested preservation discovery is relevant to the claims and to the availability of relevant evidence**

56. Defendant argues that Plaintiff has failed to explain how the reportedly deleted material could be relevant to her discrimination and retaliation claims. See Doc. 20 ¶¶ 24–25. That argument treats the present record as though Plaintiff were seeking a spoliation finding or

adverse inference based solely on an unidentified deleted item. She is not. Plaintiff seeks limited discovery to determine what material was affected, whether it remains available or can be restored, what files or systems were involved, and whether any affected information bears upon Plaintiff's claims or Defendant's defenses. The existing record supplies a concrete, non-speculative basis for that inquiry.

57. The October 2024 exchange reflects two related circumstances. Mrs. Rios reported that the particular case being discussed was "probably" associated with Assistant District Attorney Kristal Snelson. At the same time, Mrs. Rios reported that Ms. Burkhart stated that she had accidentally deleted the item while she was "deleting stuff" after receiving "Cornelia'a [sic] cases." See Doc. 18, Ex. E-4. Thus, even if the particular missing item Ms. Burkhart was attempting to locate concerned a Snelson matter, the reported accidental deletion occurred during broader deletion activity after Ms. Burkhart received Hartman-related case work. Plaintiff does not contend, at this time, that the existing record establishes that Ms. Burkhart intentionally deleted the particular missing item or that the deletion constituted spoliation.

58. The reference to Cornelia Hartman's cases supplies an independent connection to Plaintiff's former work. As Plaintiff explained in her declaration in support of Doc. 18, the cases associated with Cornelia Hartman, which were labeled as "Hartman, Cornelia (2)," were handled by the paralegal assigned to Ms. Hartman; Plaintiff held that assignment before her termination; and the relevant records later appear to have been handled by Ms. Burkhart. See Dixon Decl. in Supp. of Doc. 18 ¶¶ 85–87; Doc. 18, Exs. E-3 and E-5. Accordingly, Ms. Burkhart's reported reference to having received "Cornelia's cases" identifies a body of case work that Plaintiff previously handled and that was reassigned after Plaintiff's termination. The preservation concern therefore does not arise from unrelated deletion activity somewhere within Harris

County.

59. Mr. Martin's contemporaneous sharing of an electronic case record associated with "Hartman, Cornelia (2)" provides additional context, but Plaintiff's relevance showing does not depend upon proving that the particular record Mr. Martin shared was the exact item Ms. Burkhart deleted. See Dixon Decl. in Supp. of Doc. 18 ¶¶ 83–87. The requested discovery is designed to determine which specific item was affected, what other material was being deleted during the same activity, which matters or custodians were affected, whether deleted information remains recoverable, and whether any affected material concerns Plaintiff's former work or the issues in this litigation.

60. Those questions are particularly relevant because Defendant itself placed Plaintiff's work performance and handling of Asset Forfeiture work directly at issue before and at the time of her termination. Defendant's August 5, 2024 Notice of Administrative Suspension placed Plaintiff on paid suspension pending an investigation into alleged "policy violations and performance issues" and specifically identified, among other matters, Plaintiff's alleged failure to communicate appropriately concerning the status of her work and her alleged failure to record work in the Asset Forfeiture DDP database beginning July 25, 2024. See Reply Ex. A. Defendant's subsequent termination letter[1] likewise relied on alleged work-performance deficiencies, including work-related communication, assigned tasks, and Plaintiff's daily entries in the Asset Forfeiture DDP database. See Reply Ex. B. Records concerning Plaintiff's former caseload, case activity, assignments, DDP entries, file history, reassignment of work, and subsequent handling of those records therefore may bear upon the accuracy of Defendant's stated performance-based reasons for the challenged employment action and Plaintiff's contention that

1 The termination letter bears an apparent typographical date of August 16, 2023. The body expressly references Plaintiff's August 5, 2024 suspension, and Defendant transmitted the letter to Plaintiff by email on August 16, 2024 as the correspondence communicating the decision to terminate her employment. See Reply Ex. B.

those reasons were discriminatory or pretextual.

61. Ms. Burkhart also was not an arbitrarily selected custodian whose reported deletion activity happened to involve Plaintiff's former caseload. Plaintiff had identified Ms. Burkhart in the allegations underlying this action before the October 2024 deletion issue arose. See Doc. 1-1 at 8. Plaintiff does not rely on those allegations to establish that Ms. Burkhart deliberately deleted evidence or participated in the termination decision. They provide additional context, however, for why limited inquiry concerning Ms. Burkhart's subsequent handling of Plaintiff's reassigned work is directed toward a specifically identified custodian rather than an unrelated Harris County employee.

62. Defendant's reliance on *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015), does not require a different result. *Guzman* recognizes that a preservation duty arises when a party has notice that evidence is relevant to litigation or should know that the evidence may be relevant. *Id.* Plaintiff does not ask the Court at this stage to determine that every item affected by the reported deletion activity was relevant, to find that spoliation occurred, or to impose an adverse inference or other sanction. Rather, Plaintiff seeks limited discovery to determine which materials were affected and whether they fall within the universe of information relevant to the parties' claims or defenses. Defendant's position would effectively require Plaintiff to establish the contents and relevance of reportedly deleted material before permitting the limited discovery necessary to identify that material and evaluate its relevance. The unanswered questions concerning the deleted material are the reason for the requested discovery, not a defect in the request.

63. The applicable EEOC record-preservation regulation further reinforces the significance of that inquiry. Harris County, as a political jurisdiction, is required to preserve personnel records relevant to a discrimination charge or resulting action until final disposition.

See 29 C.F.R. § 1602.31. Plaintiff does not contend that every Asset Forfeiture case file automatically constitutes a personnel record. But to the extent records concerning Plaintiff's work activity, assignments, performance, DDP activity, or case handling were made or kept as personnel or employment records, or were used in investigating, evaluating, documenting, or supporting Defendant's asserted reasons for termination, § 1602.31 independently reinforces their preservation significance.

64. The requested inquiry also remains proportional to that relevance. Again, Plaintiff does not seek every Asset Forfeiture file nor unrestricted merits discovery into Harris County's operations. Doc. 18 targets preservation implementation, specified deletion, audit, access, backup, and restoration information, identified custodians and systems, and the handling of files and ESI implicated by the October 2024 exchange. Much of that information is uniquely within Defendant's possession or control, while the requested technical records may be necessary to determine whether relevant information remains available. The connection between the reported deletion activity, Plaintiff's transferred caseload, and Defendant's own performance-based termination rationale therefore satisfies the relevance component of Rule 26(b)(1) and supports the reasonableness of the limited inquiry under *St. Louis Group*.

**6. Defendant's own statements leave unresolved questions concerning witness-communication instructions**

65. Defendant's own descriptions of its witness-communication practices reinforce the need for limited inquiry. During the September 1, 2026 telephone conference, Defendant's counsel stated that Harris County does not interfere with preexisting personal relationships and described its standard practice as instructing management-level employees to cease communications concerning ongoing litigation. When Plaintiff specifically asked whether

employees, generally, may have been instructed to stop communicating with her during the EEOC proceeding, counsel responded that "it could be," explained that instructions to cease communications are part of Harris County's litigation practices, and stated that she would need to "do some digging" concerning what occurred at that time. See Reply Dixon Decl. ¶¶ 7–8.

66. Defendant's subsequent written clarification described the practice somewhat differently. In the September 2, 2026 clarification, counsel stated that Harris County's practice is to instruct management-level employees not to communicate with a former employee who is the subject of a litigation hold, that Plaintiff should contact current management-level employees through counsel, and that Plaintiff should go through counsel for current employees with whom she does not have a personal relationship. See Doc. 18, Ex. B-5; Dixon Decl. in Supp. of Doc. 18 ¶¶ 29–30.

67. Those descriptions are not identical in scope. The oral description focused on communications concerning ongoing litigation and acknowledged the possibility that **instructions may have been given** during the EEOC proceeding. The written clarification described a different formulation concerning communication with a former employee who is the subject of a litigation hold and routing certain contact through counsel. Neither description establishes what instructions were actually given during Plaintiff's EEOC proceeding or thereafter, when any such instructions were issued, who received them, whether they were limited to management-level employees, whether they concerned only litigation-related or privileged subjects, or whether they extended to otherwise voluntary communications about nonprivileged facts.

68. The existing factual chronology gives those unresolved questions additional significance without establishing improper interference. Plaintiff previously identified that

certain former coworkers and potential witnesses who had communicated with her about relevant matters abruptly ceased communicating with her on or about January 1, 2025. Doc. 18 expressly presented that timing as background for the requested inquiry, not as proof that Defendant caused the cessation of contact. See Doc. 18 ¶¶ 37–38. Doc. 18 also identified, as additional context rather than proof of interference, Mr. Martin's report that Mr. Butera asked him at least once whether he was communicating with Plaintiff after her termination. See Doc. 18 ¶ 39; Dixon Decl. in Supp. of Doc. 18 ¶¶ 88–90.

69. Plaintiff therefore does not ask the Court to infer, at this stage, that Defendant improperly silenced, discouraged, or interfered with any witness. Nor does Plaintiff seek privileged attorney-client communications, counsel's mental impressions, or an order restricting Defendant's ability to communicate with its employees. She seeks only the limited, nonprivileged factual information identified in Doc. 18 concerning the existence, timing, recipients, scope, and content of any instructions or directives governing whether employees or potential witnesses could communicate with Plaintiff, provide nonprivileged factual information, report contact from Plaintiff, avoid contact with Plaintiff, or communicate only through counsel.

70. That inquiry remains narrow and directly related to Plaintiff's ability to obtain relevant evidence from potential witnesses. Defendant's own oral and written descriptions do not resolve what instructions were actually given during the relevant periods. Limited discovery is therefore warranted to determine the facts rather than to presume either that improper interference occurred or that no witness-contact restrictions existed.

## VI. REQUESTED RELIEF

71. For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Harris County's Motion for Protective Order to Stay Discovery (Doc. 20). Defendant

has not established good cause for the blanket protective order it seeks, and its stated justification for temporarily postponing discovery while the Motion to Dismiss remains pending does not independently justify extinguishing Plaintiff's narrower preservation-related request.

72. Alternatively, if the Court determines that discovery should temporarily await resolution of Defendant's Motion to Dismiss (Doc. 9), Plaintiff respectfully requests that any stay be limited to that period. Because Doc. 21 denied Doc. 18 as moot based upon the accompanying recommendation that this action be dismissed, Plaintiff further requests that, if the Court declines to adopt the dismissal recommendation, the Court set aside the portion of Doc. 21 denying Doc. 18 as moot and hold Doc. 18 in abeyance during any remaining temporary stay. *Petrus* recognizes the Court's discretion to defer discovery while a potentially dispositive preliminary issue is resolved; it does not require permanent denial of discovery that may become relevant if the action proceeds.

73. If this action proceeds, Plaintiff respectfully requests that Doc. 18 be considered on its merits. The Court may authorize the requested limited discovery in full or, if it concludes that some requests are broader than necessary at this stage, tailor the authorized discovery to those categories the Court determines are sufficiently narrow, relevant, proportional, and supported by good cause.

## VII. CONCLUSION & PRAYER

74. For the foregoing reasons, Defendant has not established good cause for the blanket protective order it seeks, and the pendency of its Motion to Dismiss warrants, at most, temporary deferral rather than permanent denial of Plaintiff's limited preservation-related discovery request.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff Tiffany Nicole Dixon respectfully requests that the Court deny Defendant Harris County's Motion for Protective Order to Stay Discovery (Doc. 20); alternatively, if the Court determines that discovery should temporarily await resolution of Defendant's Motion to Dismiss (Doc. 9), narrowly limit any such stay to that period; if the Court declines to adopt the dismissal recommendation in Doc. 21, set aside the portion of Doc. 21 denying Plaintiff's Motion for Leave to Conduct Limited Expedited Discovery (Doc. 18) as moot and hold Doc. 18 in abeyance during any remaining temporary stay; if this action proceeds, consider Doc. 18 on its merits or otherwise authorize such limited discovery as the Court determines appropriate; and grant Plaintiff all other relief, at law or in equity, to which she may be justly entitled.

Respectfully submitted,

Tiffany Nicole Dixon
Plaintiff Pro Se
12313 Winebrook Drive
Pearland, Texas 77584
Telephone: (281) 450-4674
Telephone: (737) 382-0187
Tdixon2313@yahoo.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **TIFFANY NICOLE DIXON** | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:26-cv-04418** |
| | § | |
| **HARRIS COUNTY, TEXAS** | § | |
| Defendant. | § | |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on **October 6, 2026**, a true and correct copy of the foregoing Plaintiff's Reply in Further Support of Plaintiff's Motion for Leave to Conduct Limited Expedited Discovery (Doc. 18) and Response in Opposition to Defendant Harris County's Motion for Protective Order to Stay Discovery (Doc. 20) was served on counsel of record for Defendant Harris County, Texas, through the Court's CM/ECF system, which will send notification to:

**Amber Morrison**
Amber.Morrison@harriscountytx.gov

**Radha Thiagarajan**
Radha.Thiagarajan@harriscountytx.gov

Tiffany Nicole Dixon
Plaintiff Pro Se
12313 Winebrook Drive
Pearland, Texas 77584
Telephone: (281) 450-4674
Telephone: (737) 382-0187
Tdixon2313@yahoo.com