EXHIBIT
E

OFFICE OF THE
HARRIS COUNTY ATTORNEY
CHRISTIAN D. MENEFEE

March 13, 2025

*Via EEOC Respondent Portal*
U.S. Equal Employment Opportunity Commission
Houston District Office
Mickey Leland Building
1919 Smith St., 7th Floor
Houston, Texas 77002

Re: EEOC Charge 460-2024-08085 Amended; Tiffany Dixon

Harris County, on behalf of Harris County District Attorney ("HCDA") the following is the Harris County's ("Respondent") reply to the amended charge of discrimination filed by Tiffany Dixon ("Dixon" or "Charging Party"), with the Texas Workforce Commission Civil Rights Division and the Equal Employment Opportunity Commission on February 13, 2025.

**ALLEGATION 1:**

"In Spring 2023, I observed a significant disparity in the assignment of new cases within the Asset Forfeiture Division, with the majority being disproportionately assigned to my fellow paralegals, Dionda Jones and Patricia Smith. Chief Alexis Mitchell, under the direction of then- Division Chief Angela Beavers, was responsible for the disbursement of these cases. I believe cases were assigned to Ms. Smith to obscure the fact that Ms. Jones was the true target of this inequitable workload. During this time, I drafted a 128 Motion to Compel with approximately 90 pages of exhibits for a monetary seizure case, which Alexis settled around February 14, 2023, without consultation with myself or Mrs. Beavers, whom had set the final settlement offer. The settlement offer made my efforts to draft the motion immediately moot."

**RESPONSE 1:**

This allegation does not involve any discriminatory action towards the Charging Party due to any of her protected classes. Dixon alleges cases were disproportionally assigned to Dionda Jones and Patricia Smith who are not at issue in this EEOC charge.

Dixon's job duties as a paralegal included drafting Motions to Compel. **Exhibit D, p. 5**. The timing and acceptance of a case settlement is not controlled by any one party. The inference this settlement was to make Dixon's efforts moot is denied.

**ALLEGATION 2:**

"Additionally, I noticed that Mrs. Mitchell ensured the least amount of cases were assigned to herself and her paralegal, Ms. Burkhart, further highlighting inequities in the distribution process. On August 7, 2023, Ms. Beavers confronted Mrs. Mitchell about these practices in the presence of Ms. Jones, and on August 15, 2023, I personally confronted Mrs. Mitchell regarding her handling of my case. Following these events and the investigation initiated by Ms. Beavers, I believe Mrs. Mitchell retaliated against both me and Ms. Jones."

**RESPONSE 2:**

No record has been found of any adverse action taken against Dixon in August 2023. Dixon did receive an admonishment around 7 months later on March 1, 2024, via email concerning her communication with attorneys and staff. **Exhibit A**. Dixon is not privy to department decisions concerning case assignments as each case may require different workload.

**ALLEGATION 3:**

"On or about August 11, 2023, while Ms. Beavers was assigning new tasks to the Asset Forfeiture paralegals, I suggested that the paralegals renew our previous proposal to petition the DA Administration for a raise. On August 15, 2023, I confronted Mrs. Mitchell about her decision to settle one of my cases without ever working on or supervising it herself."

**RESPONSE 3:**

Dixon was a paralegal in the Asset Forfeiture Division. A review was conducted of the paralegal's duties in the Asset Forfeiture Division regarding responsibility and handling their own caseload**.** Paralegals were directed during an August 30, 2023, meeting they were no longer permitted to communicate settlement offers to attorneys or pro se respondents due to the potential to cross ethical boundaries. This change in duty applied to all paralegals within the division. Dixon attended this meeting and continued to engage in these discussions as documented in her DDP. **Exhibit B.**

Charging Party states these proposals "failed for various reasons." **Exhibit D, p.6.** There is no support these proposals are related to the events at issue as previous proposals were provided by other employees, including Ms. Mitchell, and proposals are on behalf of all Asset Forfeiture paralegals.

**ALLEGATION 4:**

"On or about August 25, 2023, Mrs. Stevens arranged a meeting with District Attorney Kim Ogg and First Assistant Chief of Staff Vivian King to ambush Ms. Beavers, only revealing that the meeting was to address "some paralegal issues."

**RESPONSE 4:**

This allegation does not involve Charging Party or any discriminatory action towards the Charging Party due to any of her protected classes.

**ALLEGATION 5:**

"On August 30, 2023, Mrs. Stevens and Mrs. King informed the paralegals that they were taking away the paralegals ability to extend settlement offers and that they would be reviewing the Asset Forfeiture system for changes. During this meeting, I personally handed Mrs. Stevens a copy of the most recent paralegal proposal and informed her that we were preparing another one to ask for a raise."

**RESPONSE 5:**

Paralegals were directed during an August 30, 2023, meeting they were no longer permitted to communicate settlement offers to attorneys or pro se respondents due to the potential to cross ethical boundaries. This change in duty applied to all paralegals within the division. Dixon attended this meeting and continued to engage in these discussions as documented in her DDP. **Exhibit B.**

Charging Party states these proposals "failed for various reasons." **Exhibit D, p.6.** There is no support these proposals are related to the events at issue as previous proposals were provided by other employees, including Ms. Mitchell, and proposals are on behalf of all Asset Forfeiture paralegals.

**ALLEGATION 6:**

"On or about September 1, 2023, Mrs. Mitchell submitted a proposal, without Ms. Beavers' review, to Human Resources Director Elizabeth Stevens, recommending a 'to-do' system that would transfer all paralegal caseloads to attorneys. This proposal appeared to be an effort by Mrs. Stevens and Mrs. Mitchell to extinguish the paralegals' leverage for wage negotiations and as retaliation by Mrs. Mitchell for confronting her for her actions in settling my case for a high settlement amount without my knowledge or the knowledge of Ms. Beavers."

**RESPONSE 6:**

Respondent denies the inference any department decision regarding caseload was a result of retaliation. Department decisions concerning job duties and caseload affected all department paralegals and attorneys. Dixon is not privy to director meetings concerning departmental decisions. Over the course of several months, meetings were held with Division Chief Beavers among other employees to draft a plan to address procedural and work-flow issues.

**ALLEGATION 7:**

"To my knowledge, Ms. Hartman would say to Ms. Smith that she "missed [her]" during the height of Ms. Hartman's complaints against me, which coincided with my attempt to notify Ms. Beavers

of the racially discriminatory environment created by Ms. Hartman. Ms. Hartman has complained about the looks on my face during meetings, nitpicking between if I brought a laptop or a notepad to meetings, wrongfully accused me of creating and transmitting settlement documents to opposing counsel without her review, wrongfully accused me of forging her signature on official documents, and repeatedly calling for supervisory intervention meetings with Ms. Beavers in order to address minor matters or anything related to my job performance."

"Further, Ms. Hartman began to intentionally ignore work that I would send her to review, which ultimately contributed to the accusation that I was not keeping up with my work prior to termination."

**RESPONSE 7:**

This allegation was included in Dixon's original EEOC charge as Allegation #3 and Allegation #4. The responses have been reiterated below for convenience.

These comments allegedly by Hartman were not made to Dixon and do not support any discriminatory animus due to race, retaliation, or disability. Additionally, Hartman's comments did not affect Dixon's work duties.

These allegations are not so severe or pervasive to rise to the level of harassment or discriminatory conduct. These conversations with supervisory personnel were to address issues and performance in the workplace between an assigned attorney and her paralegal.

Respondent does admit there were several supervisory interventions with Butera to address Dixon's communication with her assigned attorney, Hartman. Both Butera and Hartman reported that Dixon will, at times, refuse to respond when in conversation or will provide one-word responses. On June 21, 2024, Butera met with Hartman and Dixon because they had a disagreement concerning communication. Butera told Dixon that communicating with her attorney was essential. This followed Stevens' previously informing Dixon on March 1, 2024, she was expected to communicate with everyone in her division and interact in a respectful manner. **Exhibit A.**

**ALLEGATION 8:**

"Starting in or about October 2023, I was subjected to a hostile working environment and repeated harassment by my new supervising attorney, Ms. Cornelia Hartman. I reported to Ms. Beavers that I was being targeted and singled out for discipline disparately by Ms. Hartman, in combination with Mrs. Mitchell, numerous times in the form of repeated tattle-telling."

"On or about February 20, 2024, I met with both Ms. Beavers and Ms. Hartman and I verbalized my concerns of a hostile working environment and disparate, discriminatory treatment from Ms. Hartman compared to the treatment of her previous white paralegal, Ms. Patricia Smith. Additionally, I also complained of Ms. Hartman assigning tasks to me that were not assigned to her previous paralegal, Ms. Smith, nor any of the other paralegals in the Asset Forfeiture division. I have made similar complaints about the disparate assignment of tasks to the current Division

Chief, Michael Butera, coupled with the request that I be switched to a new supervising attorney and my concerns were disregarded."

**RESPONSE 8:**

This allegation was included in Dixon's original EEOC charge as Allegation #2. The response has been reiterated below for convenience.

While Dixon did make complaints during the course of her employment, these complaints were not substantiated. In fact, Dixon herself was admonished for harassing and unacceptable comments. On February 26, 2024, Dixon was overheard calling Mitchell a derogatory name and calling Hartman a derogatory slur expressing disability animus. This event was reported by employees who overheard the conversation while in the office. Dixon received a warning from Stevens that it was unacceptable to use derogatory language in an office environment regarding coworkers or supervisors and that office conversations capable of being heard by others are not private. **Exhibit A**. Dixon did not respond to this email identifying any specific issues or complaints to Human Resources Director, Elizabeth Stevens.

There is no support for the allegation Dixon was given new assignments that other paralegals were not. New duties were assigned to all paralegals within the department. As of November 29, 2023, all paralegals were responsible for e-filing documents for attorneys. **Exhibit C.** Dixon details her duties that are identical or substantially similar to two other paralegals. **Exhibit D, p.2.** All paralegals were affected by the departmental changes requiring duties to shift as the changes were implemented.

Dixon admits she was vocal about the November e-filing changes after having acquired a new attorney that needed more attention than some of the other attorneys she worked with prior to October 2023. **Exhibit D, p.3.** Butera clarified that a simple task such as summarizing a case, and any other similar requests by the supervising attorney, were the paralegal's job. Dixon also states paralegals *can* be asked to complete any of the tasks she identified in her letter. **Exhibit D, p. 6.** There was no mention of any discrimination or hostile work environment concerns in her 11-page letter to Butera.

**ALLEGATION 9:**

'On or about February 27, 2024, I met with Ms. Beavers and Denise Oncken, Executive Bureau Chief, regarding my concerns about a hostile work environment and being targeted by conduct from Mrs. Mitchell and Ms. Hartman, in combination. To my knowledge since this time, Mrs. Mitchell has spread negative rumors about me to new staff hires in the division, specifically with Mrs. Bethany Belisle, to sabotage my working relationship with her and others. Because of Mrs. Mitchell's actions, I have observed the reluctance of the new staff to work or communicate with me. To my knowledge, Mr. Butera was notified of this by Ms. Morgan Ybarra and Mrs. Mitchell was not disciplined or terminated for her actions."

**RESPONSE 9:**

This allegation was included in Dixon's original EEOC charge as Allegation #5. The response has been reiterated below for convenience.

This allegation regarding Dixon's coworker is unsupported and does not involve any discriminatory action towards the Charging Party due to any of her protected classes. Dixon is not privy to any investigation or conversations surrounding the discipline of other employees.

Human Resources Director, Elizabeth Stevens, emailed Dixon on March 1, 2024, requesting if she would like to address any specific issue or complaint with her. **Exhibit A.** Dixon did not respond to this email or bring any concerns to the Human Resources Director.

**ALLEGATION 10:**

"To my knowledge on or about April 3, 2024, my co-worker and Paralegal, Shannon Burkhart, had called me "cancer" in front of other staff, which included Mrs. Mitchell, in Mrs. Mitchell's office and Ms. Burkhart was insinuating that they were working on cutting the cancer out of the division. Additionally, Ms. Burkhart has previously refused job directives from not only Ms. Hartman, but also her current supervising attorney, Kristal Snelson."

**RESPONSE 10:**

This allegation was included in Dixon's original EEOC charge as Allegation #6. The response has been reiterated below for convenience.

This allegation regarding Dixon's coworker is unsupported and does not involve any discriminatory action towards the Charging Party due to any of her protected classes. Moreover, this event occurred approximately 5 months before Dixon's termination for documented misconduct.

**ALLEGATION 11:**

"To my recent knowledge, both Ms. Burkhart and Ms. Eleanor Delgado were watching the 2024 Summer Olympics together and refused to answer incoming calls. To my knowledge, Ms. Beavers, Mr. Butera, Ms. Stevens, Mrs. Oncken, and Vivian King, First Assistant Chief of Staff, were all made aware of Ms. Burkhart's refusal to answer the phone. Neither Ms. Burkhart, nor Ms. Delgado were disciplined or terminated for their actions."

**RESPONSE 11:**

This allegation was included in Dixon's original EEOC charge as Allegation #7. The response has been reiterated below for convenience.

This allegation regarding Dixon's coworkers is unsupported and does not involve the Charging Party and is not at issue in this complaint. Charging Party was not terminated or disciplined for events similar to watching the Summer Olympics or refusing to answer phone calls.

**ALLEGATION 12:**

"On or about June 18, 2024, Ms. Cornelia Hartman behaved unprofessionally by yelling at me because I had sent a set of gambling petitions to Mrs. Mitchell for review. Ms. Hartman was intentionally ignoring the work that I was sending her review and approximately two months had gone by before Mrs. Mitchell notified Ms. Hartman that I asked for her assistance for review. After the incident, Ms. Hartman completely misrepresented the matter by telling him that I had come to start a fight with her over a file."

**RESPONSE 12:**

On June 21, 2024, Butera met with Hartman and Dixon over a disagreement concerning communication that does not involve any protected classes at issue. This disagreement stemmed from Dixon asking Hartman to review some petitions and Hartman added it to her to-do list. Dixon later asked another attorney to review the petitions. Butera informed Dixon that communication was essential and there was no reason for Dixon to not have told Hartman this task was completed by another attorney.

**ALLEGATION 13:**

"In or about March 2024, I informed Mr. Butera and Ms. Hartman of my disabilities and need for physical therapy. On or about August 2, 2024, I submitted both an informal request for accommodations during trial preparation and a medical leave of absence for one week for my medical treatment.

**RESPONSE 13:**

This allegation was included in Dixon's original EEOC charge as Allegation #8. The response has been reiterated below for convenience.

There is no indication or documentation that Dixon is a qualified individual with a disability. Dixon had not raised any medical issues that affected her ability to perform the essential duties of her job. Dixon also did not make any request for accommodations or request for a medical leave of absence.

Dixon's notice for time off was received several days after Butera addressed Dixon's failure to follow policy regarding requesting time off. **Exhibit E.** On July 22, 2024, Dixon provided a time off notice not a request via email to Butera stating only, "I will be leaving early on the following days at about 1:00pm each day for a doctor's appointment." **Exhibit E.** After this request, Dixon was permitted to leave without issue and there is no indication that anyone expressed any animus regarding these needs.

**ALLEGATION 14:**

On or about August 5, 2024, I was abruptly placed on paid administrative leave by Ms. Stevens, pending an internal investigation regarding multiple concerns.

**RESPONSE 14:**

This allegation was included in Dixon's original EEOC charge as Allegation #9. The response has been reiterated below for convenience.

Respondent can confirm Dixon was placed on a paid suspension while an investigation into allegations of policy violations and performance issues was being completed. **Exhibit F**. This paid leave was due to legitimate business investigation of Dixon's failure to adhere to the prohibition against communicating directly with attorneys or pro se respondents with regard to settlement offers. It was also discovered that Dixon failed to record any work in her DDP (Database utilized by paralegals and attorneys to track their daily work on their cases) since July 25, 2024. **Exhibit F.** On August 5, 2024, Butera and Stevens met with Dixon to allow her an opportunity to respond to the allegations.

**ALLEGATION 15:**

On or about August 15, 2024, I was notified of Ms. Stevens' desire to end my employment contract and I was given the option to either resign, in lieu of termination, which I did not accept.

**RESPONSE 15:**

This allegation was included in Dixon's original EEOC charge as Allegation #10. The response has been reiterated below for convenience.

Dixon was an at-will employee during her employment. Dixon's conduct violated the directive that paralegals are not to communicate with attorneys or pro se litigants about settlement offers. **Exhibit B.** Accordingly, Dixon's employment was terminated. **Exhibit G.**

**ALLEGATION 16:**

"On or about August 16, 2024, I was terminated based on approximately three areas of concern. Prior to my abrupt termination, I had not been given any prior disciplinary action plans, and my last performance rating in my employee evaluation was all better than average, if not outstanding."

**RESPONSE 16:**

This allegation was included in Dixon's original EEOC charge as Allegation #11. The response has been reiterated below for convenience.

Respondent denies terminating Dixon on account of any protected classification but as a result of a failure to correct behavior and performance **Exhibit G.**

**ALLEGATION 17:**

"On or about September 25, 2024, Kristal Snelson revealed that Mrs. Mitchell told her that set-up on Tiffany "was a long process." On or about October 14, 2024, Mrs. Snelson further revealed that she believed that Mrs. Mitchell was solely responsible for Tiffany's termination because Mrs. Mitchell had told her that she had been "keeping a file" on Tiffany for years."

**RESPONSE 17:**

Dixon was terminated on August 16, 2023, over a year prior to these alleged comments. This alleged commentary does not have any effect on the termination letter issued a year prior from the Human Resources Director, Elizabeth Stevens. Ms. Snelson and Mrs. Mitchell did not issue the termination letter to terminate Charging Party. Dixon was terminated as a result of a failure to correct behavior and performance **Exhibit G.** In addition, this allegation does not involve any discriminatory action towards the Charging Party due to any of her protected classes.

**ALLEGATION 18:**

"On or about September 19, 2024, the Harris County District Attorney's Office issued a preservation email to various individuals, specifically those in the Asset Forfeiture Division, directing them to refrain from deleting any items. On or about September 20, 2024, Mr. Butera conducted a division meeting where he explicitly instructed staff to comply with the preservation directive and stated that no items should be deleted. Despite this clear directive, on or about October 8, 2024, Ms. Burkhart was overheard telling Mrs. Mitchell and Ms. Hartman that she had deleted multiple items from her computer."

**RESPONSE 18:**

Respondent can confirm there were no findings of information deleted by Ms. Burkhart relating to this matter at issue. Dixon was no longer an employee during these events and is not personally privy to emails or conversations within the department. Further, this allegation does not involve any discriminatory action towards the Charging Party due to any of her protected classes

**ALLEGATION 19:**

"On or about September 25, 2024, I learned that Human Resources Director Elizabeth Stevens announced her intent to retire from the Harris County District Attorney's Office, effective October 25, 2024. Given Mrs. Stevens' direct involvement in decisions that reinforced a hostile work environment, racially discriminatory conduct, and retaliatory actions against me, I am deeply concerned about the timing of her retirement and its potential impact on this investigation. Her central role in the events outlined in my charge raises questions about the preservation of critical evidence and records, including emails, meeting notes, and other documentation related to my claims. I respectfully request that the EEOC ensure all relevant materials are preserved and that Mrs. Stevens is held accountable for providing testimony to fully address her actions during her tenure. Her departure should not hinder the investigation or the ability to uncover systemic issues within the workplace."

**RESPONSE 19:**

This allegation does not involve any discriminatory action towards the Charging Party due to any of her protected classes. The former Director's, Elizabeth Stevens, decision to accept an employment opportunity does not affect these events which took place over a year prior.

**ALLEGATION 20:**

"On or about October 10, 2024, I received an unemployment benefits determination letter from the Texas Workforce Commission, which stated that their investigation found the '...employer fired you for a reason that was not misconduct connected with the work.' This determination also confirmed my eligibility for unemployment benefits. On the same day, Mr. Butera convened a division meeting to announce that all paralegal caseloads would be transferred to the Asset Forfeiture attorneys by the end of the month."

**RESPONSE 20:**

This allegation does not involve any discriminatory action towards the Charging Party due to any of her protected classes. Dixon was no longer an HCDA employee in October 2024 thus paralegal caseload changes have no impact on her.

**ALLEGATION 21:**

"I believe I have been discriminated against because of my race (Black) and in retaliation for reporting the unlawful racial harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended. I further believe I have been discriminated against because of my disabilities and being retaliated against for asking for a medical leave of absence, in violation of the Americans with Disabilities Act of 1990, as amended."

**RESPONSE 21:**

Respondent categorically denies that it has harassed or discriminated against Charging Party based on any protected classification, including race, disability or retaliation. Charging Party did not request a medical leave of absence or any accommodation to assist her in performing the essential functions of her job.

**CONCLUSION**

In conclusion, please note that this Position Statement is being made only in response to the general allegations contained in the above referenced charge. The statement was prepared after a preliminary investigation into the facts that are alleged in the Charge. This reply does not necessarily include all of its contentions and/or defenses that it may now or ultimately assert in regard to this matter if a lawsuit is filed or additional information is made available. Respondent respectfully requests that the Commission issue its determination that there is no reasonable basis to believe that the Charging Party's allegations are true.

Should you have any questions regarding this matter or need additional information, please contact me directly at (713) 274-5140 or via email at Carson.Dmochowski@harriscountytx.gov.

Sincerely,

*/s/ Carson B. Dmochowski*

CARSON B. DMOCHOWSKI

Assistant County Attorney:
Employment Division
Harris County Attorney's Office