EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **TIFFANY NICOLE DIXON** | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:26-cv-04418** |
| | § | |
| **HARRIS COUNTY, TEXAS** | § | |
| Defendant. | § | |

**PLAINTIFF'S PROPOSED FIRST AMENDED COMPLAINT**

COMES NOW Plaintiff, TIFFANY NICOLE DIXON, appearing *pro se*, and respectfully submits this Proposed First Amended Complaint for the Court's consideration in connection with Plaintiff's request for leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2), and respectfully alleges as follows:

## I. NATURE OF THE ACTION

1. This is an employment-discrimination and retaliation action brought against Defendant, HARRIS COUNTY, TEXAS, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.* Plaintiff alleges that Defendant, acting through the Harris County District Attorney's Office ("HCDAO"), subjected her to unlawful discrimination, harassment, retaliation, and adverse employment actions during her employment as a Paralegal in the Asset Forfeiture Division.

2. Plaintiff alleges that she experienced racially disparate treatment, heightened scrutiny, and a hostile work environment, and that Defendant retaliated against her for reporting and opposing discriminatory treatment based upon her race, in violation of Title VII. Plaintiff further

alleges that Defendant subjected her to adverse employment actions, including administrative leave and termination, because of her race and protected opposition to unlawful discrimination.

3. Plaintiff further alleges that Defendant discriminated against her because of her disabilities, failed to provide reasonable accommodations, and retaliated against her for requesting disability-related accommodations and medical leave, in violation of the ADA. On August 5, 2024, three days after Plaintiff's August 2, 2024 accommodation and medical-leave requests for a back procedure, Defendant placed Plaintiff on paid administrative leave. On August 16, 2024, Defendant terminated Plaintiff's employment. Plaintiff seeks legal and equitable relief for the resulting injuries and losses, as authorized by applicable federal law.

## II. PARTIES

4. Plaintiff, TIFFANY NICOLE DIXON, is an individual residing in Pearland, Brazoria County, Texas. Plaintiff was employed by Defendant Harris County, Texas, as a Paralegal assigned to the Asset Forfeiture Division of the Harris County District Attorney's Office until her employment was terminated on August 16, 2024.

5. Defendant, HARRIS COUNTY, TEXAS, is a political subdivision of the State of Texas and was Plaintiff's employer at all times relevant to this action. The HCDAO is the County agency through which Plaintiff was employed and in which the alleged unlawful employment practices occurred. Plaintiff brings this action against Harris County as her former employer, based upon the acts and omissions of its officials, supervisors, managers, and employees acting on its behalf.

## III. JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), as Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. § 2000e et seq., and Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. Jurisdiction is further authorized by 42 U.S.C. § 2000e-5(f)(3), which governs civil actions brought under Title VII, and 42 U.S.C. § 12117(a), which incorporates Title VII's enforcement procedures for employment-discrimination claims under the ADA.

7. This Court has personal jurisdiction over Defendant Harris County, Texas, because Defendant is a political subdivision of the State of Texas, maintains its principal governmental operations within Harris County, Texas, and employed Plaintiff within this judicial district. The employment practices and adverse actions giving rise to Plaintiff's claims occurred within the State of Texas and within this Court's territorial jurisdiction.

8. Venue is proper in the United States District Court for the Southern District of Texas, Houston Division, pursuant to 42 U.S.C. § 2000e-5(f)(3), because the alleged unlawful employment practices occurred in Harris County, Texas, within this judicial district, and Plaintiff would have continued working in the Harris County District Attorney's Office in Houston but for Defendant's alleged unlawful conduct. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this district.

## IV. ADMINISTRATIVE EXHAUSTION, TIMELINESS, AND EQUITABLE TOLLING

### A. Plaintiff's Original and Amended EEOC Charges

9. Following her termination from employment on August 16, 2024, Plaintiff appeared in person at the Houston District Office of the Equal Employment Opportunity Commission ("EEOC") on August 19, 2024, to initiate the administrative process concerning her allegations of unlawful employment discrimination and retaliation. On August 30, 2024, Plaintiff executed

her original Charge of Discrimination against the HCDAO, under EEOC Charge No. 460-2024-08085.

10. Plaintiff's original Charge identified both the EEOC and the Texas Workforce Commission Civil Rights Division (“TWCCRD”) as agencies to which the Charge was presented. Plaintiff also expressly requested that the Charge be filed with the EEOC and the appropriate state or local agency. The Charge identified the HCDAO as the employing office through which Defendant Harris County employed Plaintiff.

11. Plaintiff’s original Charge alleged discrimination based upon her race, disability, and protected activity. Its narrative expressly described racially disparate treatment, repeated harassment, heightened supervisory scrutiny, and a hostile working environment, including allegations that Plaintiff was treated differently from her supervising attorney’s previous white paralegal, Patricia Smith. The Charge further described Plaintiff’s complaints to management concerning discriminatory treatment, her disabilities and requests for workplace accommodation and medical leave, her placement on administrative leave on August 5, 2024, and her subsequent termination on August 16, 2024.

12. On December 7, 2024, Plaintiff submitted a 48-page Personal Statement and Rebuttal to Defendant’s Position Statement, supported by extensive documentary evidence and a detailed chronology of events concerning her discrimination and retaliation allegations.

13. On or about December 7–8, 2024, Plaintiff requested amendment of her original Charge to clarify and supplement her allegations and incorporate additional information developed during the administrative proceedings. The EEOC subsequently finalized Plaintiff’s Amended Charge of Discrimination on February 12, 2025. The Amended Charge retained the original EEOC Charge No. 460-2024-08085 and identified itself as an amendment to that existing Charge rather than a separately numbered Charge.

14. Plaintiff's Amended Charge further detailed her allegations of discrimination, harassment, disability-related accommodation requests, administrative leave, and termination. It also addressed post-Charge developments, including preservation directives and reported deletion of potentially relevant records.

15. Plaintiff alleges that the original and amended Charges concerned the same employment relationship and underlying allegations of race discrimination, disability discrimination, failure to accommodate, and retaliation. To the extent the Amended Charge clarified or amplified the original allegations, or alleged additional acts related to or growing out of their subject matter, Plaintiff asserts that those amendments relate back to the original Charge pursuant to 29 C.F.R. § 1601.12(b). Plaintiff's original and Amended Charges were previously filed with the Court as part of Doc. 1-1, pp. 4–5 and 7–10.

**B. The EEOC's March 5, 2026 Representation and Plaintiff's Reliance**

16. On March 5, 2026, EEOC Investigator Samantha Salazar informed Plaintiff by telephone that she would have 90 days to file a federal lawsuit and that the Notice of Right to Sue should be uploaded to the EEOC Public Portal by the following day, March 6, 2026. Plaintiff retained a recording of this conversation.

17. Plaintiff understood Investigator Salazar's representations to mean that the filing period would be calculated from March 6, 2026, making June 4, 2026, the applicable deadline. Although Plaintiff entered March 5, 2026, as the date she received the Notice in her original Complaint, the standardized form provided no space to explain Investigator Salazar's representations, Plaintiff's reliance upon them, or her resulting deadline calculation. See Doc. 1, p. 6.

18. Plaintiff relied upon that calculation in preparing to file her federal Complaint.

**C. Plaintiff's Diligence and Filing of the Complaint**

19. During the filing period, Plaintiff sought legal representation from multiple law firms. On June 3, 2026, Plaintiff contacted another attorney's office following a referral, secured assistance with the filing fee, and completed preparation of her Complaint for filing the following morning.

20. On June 4, 2026, Plaintiff contacted the Clerk's Office regarding filing procedures and subsequently filed her original Complaint in person that day. These efforts demonstrate Plaintiff's diligence in pursuing her claims and support her request for equitable tolling. True and correct copies of Plaintiff's Notice of Right to Sue, original EEOC Charge of Discrimination, and Amended EEOC Charge of Discrimination are attached hereto as Attachments 1, 2, and 3, respectively.

## V. FACTUAL ALLEGATIONS

**A. Plaintiff's Employment, Position, and Job Performance**

21. Plaintiff began working in the HCDAO's Asset Forfeiture Division through a temporary staffing agency in January 2019 and became a direct employee of Defendant in March 2019. Plaintiff remained employed as a Paralegal, in the same division, until August 16, 2024.

22. Plaintiff's responsibilities included managing assigned asset forfeiture caseloads, drafting legal documents and discovery materials, conducting legal research, maintaining case records, filing court documents, and assisting prosecutors with litigation and trial preparation. These duties were consistent with the responsibilities outlined in the HCDAO Operations Manual and Asset Forfeiture Division training materials.

23. Plaintiff reported to her assigned supervising attorney and the Division Chief. Angela

Beavers served as Division Chief until her retirement in March 2024, when Michael Butera succeeded her. Beginning in approximately October 2023, Assistant District Attorney Cornelia Hartman became Plaintiff's assigned supervising attorney.

24. Plaintiff received favorable employee performance evaluations in 2020, 2022, and 2023, with her most recent evaluation reflecting ratings ranging from above average to outstanding. Plaintiff also received a written commendation from District Attorney Kim Ogg for her work on a capital murder case. Plaintiff was never placed on a performance improvement plan before her termination.

**B. Racially Disparate Treatment and Plaintiff's Complaints**

25. Plaintiff is a Black female. Beginning in approximately October 2023, her supervising attorney, Cornelia Hartman, subjected Plaintiff to heightened scrutiny and assigned her additional responsibilities that Hartman had not required of her previous white paralegal, Patricia Smith, including drafting attorney scripts for court hearings, performing additional data-entry tasks, and filing answers on behalf of Respondents. Prior to her assignment to Hartman, Plaintiff had been assigned to four other attorneys and had periodically assisted other attorneys within the division, none of whom had required Plaintiff to perform these tasks.

26. Hartman repeatedly escalated minor workplace matters to management, criticized Plaintiff's demeanor and trivial matters such as whether she brought a laptop as opposed to a notepad to meetings, and made serious accusations of professional misconduct, including allegations that Plaintiff handled legal documents without attorney authorization and forged Hartman's signature on official documents. Although Plaintiff provided documentation rebutting these accusations, to her knowledge, Hartman faced no corrective action. Hartman also failed to timely review Plaintiff's submitted work while criticizing her for resulting delays. Further, on or

about June 18, 2024, Hartman yelled at Plaintiff during a workplace confrontation concerning documents Plaintiff had sought to have reviewed, within hearing of other employees.

27. During the summer of 2024, Plaintiff learned that two non-Black paralegals, Shannon Burkhart and Eleanor Delgado, watched the Summer Olympics together during working hours, including playing the broadcasts aloud. To Plaintiff's knowledge, neither employee was disciplined for this conduct, in contrast to the heightened scrutiny and criticism Plaintiff experienced over comparatively minor workplace matters.

28. Separately, Burkhart frequently spent working hours socializing or using her personal cellphone and repeatedly failed to answer incoming office calls, despite answering those calls being among her assigned duties.

29. Complaints concerning Burkhart's repeated failure to answer office calls were brought to HCDAO Human Resources Director Elizabeth Stevens, including through Division Chief Angela Beavers and other employees. Nevertheless, to Plaintiff's knowledge, Burkhart was not disciplined, in contrast to the heightened scrutiny of Plaintiff's work performance.

30. Chief Alexis Mitchell and Paralegal Shannon Burkhart contributed to the hostile environment by disparaging Plaintiff to other employees. On or about April 3, 2024, coworker Alyssa Rios overheard Burkhart state, "We just need to cut the cancer out," during a conversation in Mitchell's office. Plaintiff understood this remark, in the context of the ongoing targeting, as referring to efforts to remove her from the division.

31. On February 20, 2024, Plaintiff complained directly to Division Chief Angela Beavers, with Hartman present in the meeting, about the hostile working environment and racially disparate treatment she experienced compared with Smith. Plaintiff specifically identified additional duties and scrutiny imposed upon her that had not been imposed upon Smith

or other Asset Forfeiture paralegals.

32. On February 27, 2024, Plaintiff met with Beavers and Executive Bureau Chief Denise Oncken to report the hostile working environment, particularly Mitchell's conduct and Plaintiff's concerns about being targeted within the division.

33. On April 21, 2024, Plaintiff submitted a detailed written response to Division Chief Michael Butera concerning her job responsibilities, disproportionate work assignments, and ongoing problems involving Hartman. During a June 21, 2024 meeting, Butera acknowledged that he had not read Plaintiff's submission because it contained more information than he had requested. Plaintiff also raised concerns about Hartman's racially disparate treatment during that meeting. Despite Plaintiff's complaints, management failed to remedy the alleged discriminatory treatment or grant her request for reassignment to another supervising attorney.

**C. Plaintiff's Disabilities and Requests for Accommodation**

34. Plaintiff has chronic lumbar spine and sacroiliac joint conditions, a vascular hemangioma in her right calf, and a hypertrophied tendon in her left foot. These impairments cause chronic pain and substantially limit major life activities, including walking and standing for extended periods.

35. Beginning in approximately March 2024, Plaintiff informed Division Chief Michael Butera and Hartman of her medical conditions and need for ongoing physical therapy. In a separate instance, Butera specifically questioned Plaintiff, one-on-one, about the exact conditions underlying her treatment, which Plaintiff disclosed during a recorded conversation. Defendant permitted Plaintiff to adjust her work schedule to attend medical appointments but provided no other formal accommodations for her physical limitations.

36. During her employment, Plaintiff also experienced significant hair loss, which she attributes to the stress of the alleged hostile working environment. Plaintiff sought dermatological treatment for this condition in early 2024, months before her termination.

37. On August 2, 2024, Plaintiff notified management of upcoming medical appointments and requested medical leave for a scheduled procedure involving her lumbar spine and sacroiliac joint on August 20, 2024.

38. Butera did not respond to Plaintiff's August 2, 2024 medical-leave request, although he responded to another paralegal's subsequently submitted request for a medical absence. Plaintiff alleges that his failure to respond was intentional, particularly given his participation in the August 5, 2024 meeting with HR Director Elizabeth Stevens. During that meeting, Stevens raised the subject of accommodations. Plaintiff requested an opportunity to submit a formal accommodation request, but Stevens refused, stating that management would proceed in a different direction. At the conclusion of the meeting, Stevens presented Plaintiff with a pre-prepared letter placing her on paid administrative leave, notwithstanding the matters discussed and resolved during the meeting.

**D. Administrative Leave, Investigation, and Termination**

39. On August 5, 2024, HR Director Stevens placed Plaintiff on paid administrative leave pending an investigation into alleged policy violations and performance issues. The written notice cited alleged improper communications concerning settlement offers, concerns about Plaintiff's communication with supervisors regarding work assignments and requests for time off, and an alleged failure to record work in the DDP database, which is the Asset Forfeiture Division's daily docketing and case-management program, since July 25, 2024. The notice expressly characterized the suspension as nondisciplinary.

40. On August 15, 2024, Stevens informed Plaintiff by telephone that the investigation had concluded and offered her the opportunity to resign in lieu of termination. Plaintiff refused to resign, and Defendant terminated her employment effective August 16, 2024.

41. Defendant's termination letter cited Plaintiff's alleged discussion of settlement matters with an unrepresented party, ineffective communication with supervisors, purported refusal to perform assigned tasks, and failure to maintain her daily DDP work. Plaintiff disputes these allegations and contends that Defendant disregarded established workplace practices, her completed work, and delays attributable to Hartman's failure to timely review submitted materials. Specifically, the June 18, 2024 confrontation arose after Plaintiff sought another attorney's review of case materials she had timely submitted to Hartman but which Hartman had failed to review.

42. Plaintiff alleges that Defendant's stated reasons for termination were pretextual, particularly given her favorable performance history, the disparate treatment described above, her prior complaints of racial discrimination, and the timing of the adverse actions following her medical-leave request. The August 5 suspension notice also raised concerns about requests for time off despite management's knowledge of Plaintiff's ongoing medical treatment.

43. On October 10, 2024, after an investigation, the Texas Workforce Commission ("TWC") notified Plaintiff that she was eligible for unemployment benefits, determining that her discharge was for a reason that did not constitute misconduct connected with the work.

**E. Relevant Post-Termination Events**

44. Following Plaintiff's termination, former coworker Michael Martin informed Plaintiff that Assistant District Attorney Kristal Snelson had described Alexis Mitchell's efforts to have Plaintiff removed from employment as a "long process" and reported that Mitchell had

maintained a file concerning Plaintiff for years. Plaintiff alleges that these statements further support her contention that Defendant's stated reasons for termination were pretextual.

45. On or about September 19, 2024, HCDAO issued a preservation directive concerning potentially relevant records. Plaintiff subsequently learned of reported computer-file deletions by Burkhart, who, at the time of the reported deletions, was handling cases previously assigned to Plaintiff. Plaintiff raised concerns about the preservation of evidence during the EEOC investigation and seeks to determine whether records relevant to her discrimination and retaliation allegations were preserved.

46. Beginning on or about January 1, 2025, while Plaintiff's EEOC Charge remained pending, certain HCDAO employees and potential witnesses who had previously communicated with Plaintiff abruptly ceased doing so. During a September 1, 2026 telephone conference, Plaintiff asked Defendant's counsel whether County employees had been instructed to stop communicating with her. Counsel responded, "I mean, it could be," and explained that management was routinely instructed to cease litigation-related communications. Counsel further acknowledged that such instructions could arise during EEOC proceedings as part of the litigation-hold process, although she was not employed by the County at the relevant time and would need to investigate. Plaintiff alleges that these circumstances raise concerns that Defendant may have used its litigation-related communication instructions as a retaliatory means of discouraging potential witnesses from assisting her during the pending EEOC proceedings.

## VI. CAUSES OF ACTION

### COUNT I: Race Discrimination in Violation of Title VII

47. Plaintiff incorporates by reference the allegations contained in paragraphs 1–46 as though fully set forth herein.

48. Plaintiff is a Black female who was qualified to perform her duties as a Paralegal. Defendant, acting through HCDAO management and supervisory personnel, subjected Plaintiff to less favorable terms and conditions of employment, including heightened scrutiny, disproportionate work assignments, selective criticism of her performance, and ultimately termination.

49. Plaintiff alleges that her race was a motivating factor in Defendant's treatment of her, as demonstrated by the disparate treatment of non-Black paralegals, including Patricia Smith, the selective enforcement of workplace expectations, and Defendant's failure to remedy the discrimination Plaintiff reported. Defendant's conduct constitutes unlawful race discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1).

**COUNT II: Racially Hostile Work Environment in Violation of Title VII**

50. Plaintiff incorporates by reference the factual allegations contained in paragraphs 1–46 as though fully set forth herein.

51. From approximately October 2023 through August 2024, Plaintiff experienced repeated and unwelcome harassment by Hartman, Mitchell, and Burkhart, including excessive scrutiny, accusations concerning her performance, disparaging remarks, and public confrontations. Plaintiff alleges that this conduct was motivated by her race, as evidenced by the more favorable treatment of non-Black paralegals, particularly Patricia Smith, and Defendant's selective enforcement of workplace expectations.

52. Plaintiff alleges that the cumulative conduct was sufficiently severe or pervasive to create an objectively and subjectively hostile working environment and alter the conditions of her employment. Despite Plaintiff's repeated complaints to supervisory personnel, Defendant failed to take effective corrective action, in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1).

**COUNT III: Retaliation in Violation of Title VII**

53. Plaintiff incorporates by reference the factual allegations contained in paragraphs 1–46 as though fully set forth herein.

54. Plaintiff engaged in activity protected under Title VII by reporting and opposing racially disparate treatment and harassment, including her February 20, 2024 complaint to Angela Beavers and Cornelia Hartman and her June 21, 2024 complaint to Michael Butera. Plaintiff also documented her concerns regarding unequal assignments and Hartman's conduct in an April 21, 2024 written submission to Butera. Defendant, through its management and supervisory personnel, had knowledge of Plaintiff's complaints.

55. Plaintiff alleges that Defendant retaliated against her for opposing racial discrimination by subjecting her to continued heightened scrutiny, adverse performance accusations, paid administrative leave, and ultimately termination. Plaintiff alleges that the continuation and escalation of this treatment following her complaints, together with the allegedly pretextual reasons for her termination, establish a causal connection between her protected activity and Defendant's adverse actions, in violation of Title VII, 42 U.S.C. § 2000e-3(a).

**COUNT IV: Disability Discrimination in Violation of the ADA**

56. Plaintiff incorporates by reference the factual allegations contained in paragraphs 1–46 as though fully set forth herein.

57. Plaintiff is an individual with disabilities within the meaning of the ADA, including physical impairments that substantially limit major life activities such as walking and standing. Plaintiff was qualified to perform the essential functions of her Paralegal position, with

reasonable accommodation, and Defendant's management and supervisory personnel were aware of her medical conditions and treatment needs.

58. Plaintiff alleges that Defendant subjected her to adverse employment actions, including administrative leave and termination, because of her disabilities. Plaintiff relies upon Defendant's scrutiny of her medical-related absences, the concerns regarding time-off requests raised in her administrative suspension notice, and the proximity of these actions to her August 2, 2024 medical-leave request. Plaintiff alleges that this conduct constitutes disability discrimination in violation of the ADA, 42 U.S.C. § 12112(a).

**COUNT V: Failure to Provide Reasonable Accommodation in Violation of the ADA**

59. Plaintiff incorporates by reference the factual allegations contained in paragraphs 1–46 as though fully set forth herein.

60. Plaintiff was a qualified individual with disabilities who required reasonable accommodation for her medical conditions. Although Defendant permitted Plaintiff to adjust her work schedule for physical therapy appointments, Plaintiff separately requested medical leave on August 2, 2024, for a scheduled medical procedure on August 20, 2024.

61. Defendant did not respond to Plaintiff's medical-leave request. During the August 5, 2024 meeting, Plaintiff requested an opportunity to submit a formal accommodation request after HR Director Stevens raised the subject, but Stevens refused and proceeded with placing Plaintiff on administrative leave. Plaintiff alleges that Defendant failed to provide reasonable accommodation or meaningfully consider her request, in violation of the ADA, 42 U.S.C. § 12112(b)(5)(A).

**COUNT VI: Retaliation in Violation of the ADA**

62. Plaintiff incorporates by reference the factual allegations contained in paragraphs 1–46 as though fully set forth herein.

63. Plaintiff engaged in activity protected under the ADA by requesting reasonable accommodations for her disabilities, including medical leave on August 2, 2024, and an opportunity to submit a formal accommodation request during the August 5, 2024 meeting. Defendant's management and supervisory personnel were aware of these requests.

64. Plaintiff alleges that Defendant retaliated against her for requesting accommodations by placing her on paid administrative leave on August 5, 2024, and terminating her employment on August 16, 2024. The close temporal proximity between Plaintiff's requests and these adverse actions, together with Defendant's scrutiny of her medical-related absences and allegedly pretextual reasons for termination, supports Plaintiff's allegation of retaliation in violation of the ADA, 42 U.S.C. § 12203(a).

## VII. DAMAGES AND INJURIES

65. As a direct and proximate result of Defendant's alleged unlawful conduct, Plaintiff has suffered economic losses, including lost wages, compensation, salary increases, health insurance benefits, retirement benefits and contributions, including those associated with the Texas County & District Retirement System ("TCDRS"), and other employment-related benefits. Plaintiff seeks appropriate back pay, front pay, and other make-whole relief for the periods supported by the evidence and authorized by applicable law.

66. Plaintiff has also suffered emotional distress, mental anguish, inconvenience, and loss of enjoyment of life as a result of Defendant's alleged discriminatory and retaliatory conduct. Plaintiff seeks compensatory damages for these injuries to the extent authorized by applicable

law and supported by the evidence.

## VIII. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff, TIFFANY NICOLE DIXON, appearing *pro se*, respectfully requests judgment against Defendant, HARRIS COUNTY, TEXAS, and the following relief:

a. Back pay, including lost wages, applicable salary increases, employment-related compensation, and lost benefits, together with appropriate interest;

b. Restoration or compensation for lost retirement benefits and contributions, including those associated with TCDRS, to the extent recoverable under applicable law;

c. Front pay in lieu of reinstatement, which Plaintiff does not seek, for such period and in such amount as the Court determines appropriate to make Plaintiff whole, including reasonably anticipated lost earnings, salary increases, and employment-related benefits, without limitation to a predetermined ending date, subject to applicable law and the evidence presented;

d. Compensatory damages for emotional distress, mental anguish, inconvenience, loss of enjoyment of life, and other legally compensable injuries;

e. Such additional equitable or injunctive relief as the Court determines appropriate;

f. Taxable court costs, prejudgment and postjudgment interest, as authorized by law; and

g. Such other and further relief, whether legal or equitable, to which Plaintiff may be entitled.

## IX. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable as a matter of right.

Respectfully submitted,

Tiffany Nicole Dixon
Plaintiff Pro Se
12313 Winebrook Drive
Pearland, Texas 77584
Telephone: (281) 450-4674
Telephone: (737) 382-0187
Tdixon2313@yahoo.com

ATTACHMENT
1

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Houston District Office**
1919 Smith Street, 6th Floor
Houston, TX 77002
(346) 327-7700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 03/05/2026

**To:** Ms. Tiffany N. Dixon
12313 Winebrook Drive
Pearland, TX 77584
Charge No: 460-2024-08085

EEOC Representative and email: SAMANTHA SALAZAR
INVESTIGATOR
SAMANTHA.SALAZAR@EEOC.GOV

---

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 460-2024-08085.

On behalf of the Commission,

Digitally Signed By:Rayford O. Irvin
03/05/2026

Rayford O. Irvin
District Director

**cc:** Carson Bailey, Special Counsel
Harris County Attorney's Office
1019 CONGRESS ST. FL 15
Houston, TX 77002

Please retain this Notice for your records.

# INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court* ***under Federal law****. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 460-2024-08085 to the District Director at Rayford O. Irvin, 1919 Smith Street 6th Floor, Houston, TX 77002.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 460-2024-08085 to the District Director at Rayford O. Irvin, 1919 Smith Street 6th Floor, Houston, TX 77002.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

## NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at:
http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.
- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- ✓ **Only one** major life activity need be substantially limited.
- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.
- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability."

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

ATTACHMENT 2

EEOC Form 5 (07/24)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 460-2024-08085 |
| Texas Workforce Commission Civil Rights Division | |

---

Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)*: Miss Tiffany N. Dixon

Home Phone: (281) 450-4674

Year of Birth: 1987

Street Address: 12313 Winebrook Drive

Pearland, TX 77584

---

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: Harris County District Attorney's Office

No. Employees, Members: 501+ Employees

Phone No.: (713) 274-5800

Street Address: 1201 Franklin Street, 12 FL.

Houston, TX 77002

Name:

No. Employees, Members:

Phone No.:

Street Address:

---

DISCRIMINATION BASED ON:

Disability, Retaliation

---

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 02/20/2024

Latest: 08/15/2024

---

THE PARTICULARS ARE:

I. In or about August 2023, I was notified by my then Division Chief, Angela Beavers, that Mrs. Alexis Mitchell had met with Human Resources Director, Elizabeth Stevens, in an attempt to have adverse action taken against me. I believe that that was in retaliation for my conversation with Mrs. Mitchell on or about August 15, 2024, regarding her using her supervisory authority to settle one of my cases for a high settlement amount without my knowledge or the knowledge of Ms. Beavers. Starting in or about October 2023, I was subjected to a hostile working environment and repeated harassment by my new supervising attorney, Ms. Cornelia Hartman. I reported to Ms. Beavers that I was being targeted and singled out for discipline disparately by Ms. Hartman, in combination with Mrs. Mitchell, numerous times in the form of repeated tattle-telling. On or about February 20, 2024, I met with both Ms. Beavers and Ms. Hartman and I verbalized my concerns of a hostile working environment and disparate, discriminatory treatment from Ms. Hartman compared to the treatment of her previous white paralegal, Ms. Patricia Smith. Additionally, I also complained of Ms. Hartman assigning tasks to me that were not assigned to her previous paralegal, Ms. Smith, nor any of the other paralegals in the Asset Forfeiture division. I have made similar complaints about the disparate assignment of tasks to the current Division Chief, Michael Butera, coupled with the request that I be switched to a new supervising attorney and my concerns were disregarded. To my knowledge, Ms. Hartman would say to Ms. Smith that she "missed [her]" during the height of Ms. Hartman's complaints against me, which coincided with my attempt to notify Ms. Beavers of the racially discriminatory environment created by Ms. Hartman. Ms. Hartman has complained about the looks on my face during meetings, nitpicking between if I brought a laptop or a notepad to meetings, wrongfully accused me of creating and transmitting settlement documents to opposing counsel without her review, wrongfully accused me of forging her signature

on official documents, and repeatedly calling for supervisory intervention meetings with Ms. Beavers in order to address minor matters or anything related to my job performance. On or about February 27, 2024, I met with Ms. Beavers and Denise Oncken, Executive Bureau Chief, regarding my concerns about a hostile work environment and being targeted by conduct from Mrs. Mitchell and Ms. Hartman, in combination. To my knowledge since this time, Mrs. Mitchell has spread negative rumors about me to new staff hires in the division, specifically with Mrs. Bethany Belisle, to sabotage my working relationship with her and others. Because of Mrs. Mitchell's actions, I have observed the reluctance of the new staff to work or communicate with me. To my knowledge, Mr. Butera was notified of this by Ms. Morgan Ybarra and Mrs. Mitchell was not disciplined or terminated for her actions. II. To my knowledge on or about April 3, 2024, my co-worker and Paralegal, Shannon Burkhart, had called me "cancer" in front of other staff, which included Mrs. Mitchell, in Mrs. Mitchell's office and Ms. Burkhart was insinuating that they were working on cutting the cancer out of the division. Additionally, Ms. Burkhart has previously refused job directives from not only Ms. Hartman, but also her current supervising attorney, Kristal Snelson. To my recent knowledge, both Ms. Burkhart and Ms. Eleanor Delgado were watching the 2024 Summer Olympics together and refused to answer incoming calls. To my knowledge, Ms. Beavers, Mr. Butera, Ms. Stevens, Mrs. Oncken, and Vivian King, First Assistant Chief of Staff, were all made aware of Ms. Burkhart's refusal to answer the phone. Neither Ms. Burkhart, nor Ms. Delgado were disciplined or terminated for their actions. III. In or about March 2024, I informed Mr. Butera and Ms. Hartman of my disabilities and need for physical therapy. On or about August 2, 2024, I submitted both an informal request for accommodations during trial preparation and a medical leave of absence for one week for my medical treatment. On or about August 5, 2024, I was abruptly placed on paid administrative leave by Ms. Stevens, pending an internal investigation regarding multiple concerns. On or about August 15, 2024, I was notified of Ms. Stevens' desire to end my employment contract and I was given the option to either resign, in lieu of termination, which I did not accept. On or about August 16, 2024, I was terminated based on approximately three areas of concern. Prior to my abrupt termination, I had not been given any prior disciplinary action plans, and my last performance rating in my employee evaluation was all better than average, if not outstanding. IV. I believe I have been discriminated against because of my race (Black) and in retaliation for reporting the unlawful racial harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended. I further believe I have been discriminated against because of my disabilities and being retaliated against for asking for a medical leave of absence, in violation of the Americans with Disabilities Act of 1990, as amended.

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Digitally Signed By: Miss Tiffany N. Dixon

08/30/2024

Charging Party Signature & Date

---

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

Signature of Complainant

Subscribed and sworn to before me this date: ______________________

## PRIVACY ACT STATEMENT

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (06/24).
2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.
3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.
4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.
5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

ATTACHMENT 3

**EEOC Charge No.:** 460-2024-08085 (Amended)

**Charging Party:** Tiffany Dixon

**Respondent:** Harris County District Attorney's Office

This charge is amended to include the following:

I. In Spring 2023, I observed a significant disparity in the assignment of new cases within the Asset Forfeiture Division, with the majority being disproportionately assigned to my fellow paralegals, Dionda Jones and Patricia Smith. Chief Alexis Mitchell, under the direction of then-Division Chief Angela Beavers, was responsible for the disbursement of these cases. I believe cases were assigned to Ms. Smith to obscure the fact that Ms. Jones was the true target of this inequitable workload. During this time, I drafted a 128 Motion to Compel with approximately 90 pages of exhibits for a monetary seizure case, which Alexis settled around February 14, 2023, without consultation with myself or Mrs. Beavers, whom had set the final settlement offer. The settlement offer made my efforts to draft the motion immediately moot.

Additionally, I noticed that Mrs. Mitchell ensured the least amount of cases were assigned to herself and her paralegal, Ms. Burkhart, further highlighting inequities in the distribution process. On August 7, 2023, Ms. Beavers confronted Mrs. Mitchell about these practices in the presence of Ms. Jones, and on August 15, 2023, I personally confronted Mrs. Mitchell regarding her handling of my case. Following these events and the investigation initiated by Ms. Beavers, I believe Mrs. Mitchell retaliated against both me and Ms. Jones."

On or about August 11, 2023, while Ms. Beavers was assigning new tasks to the Asset Forfeiture paralegals, I suggested that the paralegals renew our previous proposal to petition the DA Administration for a raise. On August 15, 2023, I confronted Mrs. Mitchell about her decision to settle one of my cases without ever working on or supervising it herself.

On or about August 25, 2023, Mrs. Stevens arranged a meeting with District Attorney Kim Ogg and First Assistant Chief of Staff Vivian King to ambush Ms. Beavers, only revealing that the meeting was to address "some paralegal issues."

On August 30, 2023, Mrs. Stevens and Mrs. King informed the paralegals that they were taking away the paralegals ability to extend settlement offers and that they would be reviewing the Asset Forfeiture system for changes. During this meeting, I personally handed Mrs. Stevens a copy of the most recent paralegal proposal and informed her that we were preparing another one to ask for a raise.

On or about September 1, 2023, Mrs. Mitchell submitted a proposal, without Ms. Beavers' review, to Human Resources Director Elizabeth Stevens, recommending a 'to-do' system that would transfer all paralegal caseloads to attorneys. This proposal appeared to be an effort by Mrs. Stevens and Mrs. Mitchell to extinguish the paralegals' leverage for wage negotiations and as retaliation by Mrs. Mitchell for confronting her for her actions in settling my case for a high settlement amount without my knowledge or the knowledge of Ms. Beavers.

Starting in or about October 2023, I was subjected to a hostile working environment and repeated harassment by my new supervising attorney, Ms. Cornelia Hartman. I reported to Ms. Beavers that I was being targeted and singled out for discipline disparately by Ms. Hartman, in combination with Mrs. Mitchell, numerous times in the form of repeated tattle-telling. To my knowledge, Ms. Hartman would say to Ms. Smith that she "missed [her]" during the height of Ms. Hartman's complaints against me, which coincided with my attempt to notify Ms. Beavers of the racially discriminatory environment created by Ms. Hartman. Ms. Hartman has complained about the looks on my face during meetings, nitpicking between if I brought a laptop or a notepad to meetings, wrongfully accused me of creating and transmitting settlement documents to opposing counsel without her review, wrongfully accused me of forging her signature on official documents, and repeatedly calling for supervisory intervention meetings with Ms. Beavers in order to address minor matters or anything related to my job performance. Further, Ms. Hartman began to intentionally ignore work that I would send her to review, which ultimately contributed to the accusation that I was not keeping up with my work prior to termination.

On or about February 20, 2024, I met with both Ms. Beavers and Ms. Hartman and I verbalized my concerns of a hostile working environment and disparate, discriminatory treatment from Ms. Hartman compared to the treatment of her previous white paralegal, Ms. Patricia Smith. Additionally, I also complained of Ms. Hartman assigning tasks to me that were not assigned to her previous paralegal, Ms. Smith, nor any of the other paralegals in the Asset Forfeiture division.

I have made similar complaints about the disparate assignment of tasks to the current Division Chief, Michael Butera, coupled with the request that I be switched to a new supervising attorney and my concerns were disregarded.

On or about February 27, 2024, I met with Ms. Beavers and Denise Oncken, Executive Bureau Chief, regarding my concerns about a hostile work environment and being targeted by conduct from Mrs. Mitchell and Ms. Hartman, in combination.

To my knowledge since this time, Mrs. Mitchell has spread negative rumors about me to new staff hires in the division, specifically with Mrs. Bethany Belisle, to sabotage my working relationship with her and others. Because of Mrs. Mitchell's actions, I have observed the reluctance of the new staff to work or communicate with me. To my knowledge, Mr. Butera was notified of this by Ms. Morgan Ybarra and Mrs. Mitchell was not disciplined or terminated for her actions.

To my knowledge on or about April 3, 2024, my co-worker and Paralegal, Shannon Burkhart, had called me "cancer" in front of other staff, which included Mrs. Mitchell, in Mrs. Mitchell's office and Ms. Burkhart was insinuating that they were working on cutting the cancer out of the division. Additionally, Ms. Burkhart has previously refused job directives from not only Ms. Hartman, but also her current supervising attorney, Kristal Snelson.

To my recent knowledge, both Ms. Burkhart and Ms. Eleanor Delgado were watching the 2024 Summer Olympics together and refused to answer incoming calls. To my knowledge, Ms.

Beavers, Mr. Butera, Ms. Stevens, Mrs. Oncken, and Vivian King, First Assistant Chief of Staff, were all made aware of Ms. Burkhart's refusal to answer the phone. Neither Ms. Burkhart, nor Ms. Delgado were disciplined or terminated for their actions.

On or about June 18, 2024, Ms. Cornelia Hartman behaved unprofessionally by yelling at me because I had sent a set of gambling petitions to Mrs. Mitchell for review. Ms. Hartman was intentionally ignoring the work that I was sending her review and approximately two months had gone by before Mrs. Mitchell notified Ms. Hartman that I asked for her assistance for review. After the incident, Ms. Hartman completely misrepresented the matter by telling him that I had come to start a fight with her over a file.

In or about March 2024, I informed Mr. Butera and Ms. Hartman of my disabilities and need for physical therapy. On or about August 2, 2024, I submitted both an informal request for accommodations during trial preparation and a medical leave of absence for one week for my medical treatment. On or about August 5, 2024, I was abruptly placed on paid administrative leave by Ms. Stevens, pending an internal investigation regarding multiple concerns. On or about August 15, 2024, I was notified of Ms. Stevens' desire to end my employment contract and I was given the option to either resign, in lieu of termination, which I did not accept. On or about August 16, 2024, I was terminated based on approximately three areas of concern. Prior to my abrupt termination, I had not been given any prior disciplinary action plans, and my last performance rating in my employee evaluation was all better than average, if not outstanding.

On or about September 25, 2024, Kristal Snelson revealed that Mrs. Mitchell told her that set-up on Tiffany "was a long process." On or about October 14, 2024, Mrs. Snelson further revealed that she believed that Mrs. Mitchell was solely responsible for Tiffany's termination because Mrs. Mitchell had told her that she had been "keeping a file" on Tiffany for years.

On or about September 19, 2024, the Harris County District Attorney's Office issued a preservation email to various individuals, specifically those in the Asset Forfeiture Division, directing them to refrain from deleting any items. On or about September 20, 2024, Mr. Butera conducted a division meeting where he explicitly instructed staff to comply with the preservation directive and stated that no items should be deleted. Despite this clear directive, on or about October 8, 2024, Ms. Burkhart was overheard telling Mrs. Mitchell and Ms. Hartman that she had deleted multiple items from her computer.

On or about September 25, 2024, I learned that Human Resources Director Elizabeth Stevens announced her intent to retire from the Harris County District Attorney's Office, effective October 25, 2024. Given Mrs. Stevens' direct involvement in decisions that reinforced a hostile work environment, racially discriminatory conduct, and retaliatory actions against me, I am deeply concerned about the timing of her retirement and its potential impact on this investigation. Her central role in the events outlined in my charge raises questions about the preservation of critical evidence and records, including emails, meeting notes, and other documentation related to my claims. I respectfully request that the EEOC ensure all relevant materials are preserved and that Mrs. Stevens is held accountable for providing testimony to

fully address her actions during her tenure. Her departure should not hinder the investigation or the ability to uncover systemic issues within the workplace.

On or about October 10, 2024, I received an unemployment benefits determination letter from the Texas Workforce Commission, which stated that their investigation found the '...employer fired you for a reason that was not misconduct connected with the work.' This determination also confirmed my eligibility for unemployment benefits. On the same day, Mr. Butera convened a division meeting to announce that all paralegal caseloads would be transferred to the Asset Forfeiture attorneys by the end of the month.

II. I believe I have been discriminated against because of my race (Black) and in retaliation for reporting the unlawful racial harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended. I further believe I have been discriminated against because of my disabilities and being retaliated against for asking for a medical leave of absence, in violation of the Americans with Disabilities Act of 1990, as amended.

2/12/25
Date

[signature]
Signature