EXHIBIT
C

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 14-50668

United States Court of Appeals
Fifth Circuit
**FILED**
July 30, 2015
Lyle W. Cayce
Clerk

MANUEL ALVARADO,

Plaintiff - Appellant

v.

MINE SERVICE, LIMITED, also known as Mine Service, Incorporated,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:13-CV-315

Before JONES, SMITH, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge.*

Statutes of limitations often result in the severe but necessary consequence of dismissing a plaintiff's case because of his lawyer's lack of diligence. But any untimeliness in the filing of this employment lawsuit resulted in large part from the vigilance of the plaintiff's attorney rather than his indolence. We thus determine that the unusual facts of this case present one of the exceptional situations in which equitable tolling is appropriate.

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**I**

Manuel Alvarado, an American citizen of Mexican descent, was employed by Mine Service Ltd. as a heavy equipment operator at its power plant in Franklin, Texas.[1] Upon arriving for the night shift one evening in early 2011, he found a noose on a desk in the office. When he confronted the shift foreman about it, the foreman explained that the concrete supervisor left it "to tell his guys if they didn't finish the job on time, that he was going to hang them." ROA.192. Alvarado voiced concern over the noose and the trouble that Mine Service could get in if anyone complained. When Alvarado asked what he should do with the noose, the shift foreman told him to throw it out. Aside from that incident, Alvarado had also received numerous complaints from fellow Hispanic workers that they had been mistreated on the night shift. But when Alvarado helped facilitate a meeting between his coworkers and the supervisor, none of the coworkers voiced any grievances. Later that week, Alvarado's supervisor contacted him and told him rumors were going around the office about the noose and admonished Alvarez that he should "just stay quiet, don't say nothing to nobody just – We don't want no trouble." ROA.194. A week later, on May 30, 2011, Alvarado was notified by phone that he had been fired. His supervisor explained that Alvarado had been "stirring up racial things, and . . . was stirring up too much trouble there at the power plant." ROA.194.

On June 13, two weeks after he was terminated, Alvarado filed a timely charge of retaliation with the EEOC alleging he was fired shortly after he "complained to management about an offensive noose [that] other employees also were offended by." ROA.395. On the second anniversary of the

---

[1] This recitation of events is based on the evidence presented at summary judgment, primarily Alvarado's deposition. Disputed facts are construed in Alvarado's favor given the summary judgment posture.

administrative filing (June 13, 2013), without the EEOC's having taken any action, Alvarado's counsel requested a right to sue letter. Consistent with the requirement that the EEOC issue such a letter in response to a request if more than 180 days have elapsed without completion of the agency investigation,[2] the EEOC issued a letter the next day.

Although the letter dated June 14 correctly listed Alvarado's name, address, and the EEOC charge number, it contained numerous mistakes and omissions. First, although more than 180 days had elapsed since Alvarado filed his charge with the EEOC, the letter stated that "[l]ess than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge." ROA.267. Second, although Alvarado only alleged violations of Title VII, the letter checked a box pertaining to the Age Discrimination in Employment Act stating that the EEOC was closing Alvarado's case and that his "lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice. Otherwise your right to sue based on the above-numbered charge will be lost." ROA.267. Finally, although there are lines for a named official's signature and the date, both were left blank.

The same day this letter issued, the office administrator employed by Alvarado's attorney emailed the EEOC to notify it of the mistakes and request a corrected letter. The EEOC investigator then called the office administrator and explained that the June 14 letter "was accidentally sent due to a clerical error by a new EEOC clerk" and that a "correct and executed Notice of Right to Sue would be issued." ROA.398. The law office again contacted the EEOC by email on June 26 to inquire about the status of the revised letter. On July

[2] *See* 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. § 1601.28(a)(1).

8, the EEOC issued a corrected letter that listed only Alvarado's claim under Title VII, detailed that more than 180 days had passed since the charge had been filed, and stated that the EEOC was terminating its processing of the charge. It was signed by Lillie Wilson for Janet V. Elizondo, the EEOC District Director. An entry in the EEOC case log dated July 8 notes "mailed out correct copy w/ signature" and also indicates Alvarado's case was "closed" on that date.

On October 2, 2013, Alvarado filed his lawsuit alleging retaliation. Given the 90-day deadline for filing Title VII suits after the right to sue letter issues,[3] the suit was timely if the "correct" July 8 letter started the clock running, but twenty days late if the June 14 letter did. Mine Service moved for summary judgment on limitations grounds, arguing that the earlier letter started the 90-day period. The district court agreed based on its finding that the June 14 letter "include[d] everything that is required [under the regulations]." ROA.412. In doing so, the district court held that the office administrator's statement about what the EEOC investigator said over the phone was hearsay that could not be used to show that the EEOC issued the first letter in error. The district court then *sua sponte* considered but rejected the possibility of equitable tolling, concluding that the EEOC did not "mislead[] the plaintiff about his rights" because the first right to sue letter was facially valid. ROA.415. Alvarado timely appealed.

## II

Alvarado first argues that the district court improperly concluded that the June letter commenced the limitations period. He relies on the EEOC case log indicating that the later July letter was the "correct" one and cites the numerous errors contained in the June letter, emphasizing the lack of any signature. We are more concerned with the false information in the June

[3] *See* 42 U.S.C. § 2000e-5(f)(1).

letter—that the EEOC checked the box for an ADEA claim that Alvarado did not assert and the incorrect statement that the matter had been pending with the agency for less than 180 days. Mine Service counters that the June 14 letter nonetheless triggered the limitations period because it contains the information that is required by an EEOC regulation: authorization to file suit; advice about how to bring a lawsuit; a copy of the charge; and the agency's decision. *See* 29 C.F.R. § 1601.28(e). That regulation does not, however, address how inaccurate information affects the legal status of a right to sue letter. It seems that at some point—consider situations in which the right to sue letter lists the incorrect claimant's name or fails to check the box for the claim the party brought—defects in a letter might render it ineffective.

But we need not resolve the difficult issue of whether the defects in the June 14 letter rise to that level. Even assuming the district court correctly held that limitations began running upon issuance of the first letter, we conclude that equitable tolling is warranted.

The statutory 90-day filing requirement "is not a jurisdictional prerequisite, but more akin to a statute of limitations. Thus, the ninety-day filing requirement is subject to equitable tolling." *Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 239 (5th Cir. 2010) (internal citations omitted). We have previously outlined three nonexclusive situations when equitable tolling may be appropriate: "(1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of her rights." *Granger v. Aaron's Inc.*, 636 F.3d 708, 712 (5th Cir. 2011) (citing *Wilson v. Sec'y Dep't of Veterans Affairs*, 65 F.3d 402, 404 (5th Cir. 1995)). We review a tolling decision

under the deferential abuse of discretion standard.[4] *See id.* "A trial court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 457 (5th Cir. 2011).

The district court contemplated whether this case implicated the third situation in which we have recognized that tolling may be appropriate—when the EEOC misleads a plaintiff. Yet in doing so it evaluated only whether the EEOC's act of sending two letters misled Alvarado about the nature of his rights. Following cases from other circuits finding tolling unnecessary when the EEOC reissues a right to sue notice with some minor, nonsubstantive revisions, it concluded that this was not a situation in which the EEOC had misled Alvarado about which letter triggered the 90-day deadline for filing suit. *See Santini v. Cleveland Clinic Fla.*, 232 F.3d 823 (11th Cir. 2000); *Love v. Harsh Inv. Corp.*, 983 F.2d 1076, 1993 WL 4811 (9th Cir. 1993) (unpublished); *Brown v. Mead Corp.*, 646 F.2d 1163 (6th Cir. 1981).[5]

An erroneous evidentiary ruling infected that determination. Recall that when it considered the issue of which letter commenced the limitations period, the district court excluded as hearsay the statement from the law firm office administrator that the EEOC told her the first letter was "accidental[]" and the "correct" letter would be forthcoming. *See* ROA.398. That evidentiary ruling was correct in that context. To consider the EEOC investigator's out-of-

[4] Alvarado contends that the standard of review should be de novo. But we review de novo only a district court's determination that tolling "was *legally* unavailable due to the court's interpretation of a statute, regulation, or caselaw." *See id.* (emphasis added). The district court recognized that the limitations period for filing a Title VII case may be tolled, but concluded that tolling was not justified under "the facts in this case." ROA.413. Our review is therefore for abuse of discretion.

[5] The district court also cited other cases parenthetically. *See Howard v. Boatmen's Nat'l Bank of St. Louis*, 230 F.3d 1363 (8th Cir. 2000) (unpublished); *Witt v. Roadway Express*, 136 F.3d 1424 (10th Cir. 1998); *Lee v. Alta Pac. Grp.*, 990 F.2d 1258 (9th Cir. 1993) (unpublished); *Davidson v. Serv. Corp. Int'l*, 943 F. Supp. 734 (S.D. Tex. 1996).

court statement in deciding which letter was the "correct" one would be using the statement for the truth of the matter it asserts—that the July letter was, in the eyes of the EEOC, the valid one. *See* Fed. R. Evid. 801(c). But for purposes of the tolling analysis, what matters is not which EEOC letter is legally speaking the correct one, but the effect the EEOC's statements had on how Alvarado and his attorney decided to proceed with the case. Considering a statement not for its truth but as an explanation of why the listener acted in a certain manner is a hornbook example of nonhearsay. *See* 6 Michael H. Graham, *Handbook of Fed. Evid.* § 801:5 (7th ed. 2014) (explaining that "statements made by one person which become known to another offered as a circumstance under which the latter acted and as bearing upon his conduct" are not hearsay and collecting cases). And the office administrator's statement is corroborated by the EEOC log obtained later in this litigation that lists the July 8 letter as the "correct" one and notes that the EEOC matter was not closed until that second letter issued.[6] Moreover, the July EEOC letter advised Alvarado that he could file suit "within 90 days of [his] receipt of *this* notice." *See* ROA.394 (emphasis added).

[6] Mine Service argues that the EEOC has no authority to issue a second letter unless it is reconsidering an earlier decision, which requires notifying the parties that it is reopening the case. *See Santini*, 232 F.3d at 825; *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 245–46 (5th Cir. 1980) (explaining that the EEOC may issue a second notice of right to sue "upon completion of a discretionary reconsideration of a prior determination provided it has given notice to both parties of its decision to reconsider within the ninety-day period provided by the initial notice of right-to-sue"). The second letter in this case did not implicate those reconsideration procedures. The EEOC case log states that it did not "close" Alvarado's case until it issued the "corrected" July 8 letter. There thus was no closed case to reopen before that date. And in neither letter did the EEOC make a determination about Alvarado's case that could be "reconsidered" (given the agency delay, plaintiff's counsel asked for the right to sue letter before the EEOC reached a determination). In any event, to the extent Mine Service is correct and the issuance of the second letter was in error, the EEOC's issuance of a letter it had no authority to issue would only bolster a finding that it misled Alvarado concerning his rights.

When the office administrator's corroborated statement is considered for its nonhearsay purpose, this case squarely falls into the third category in which we have found tolling appropriate because the EEOC misled Alvarado about when he had to file suit (assuming, as we have, that the first letter triggered the limitations period). *See Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003) (providing that EEOC's misleading plaintiff about his rights is potential basis for equitable tolling); *Page v. U.S. Indus., Inc.*, 556 F.2d 346, 351 (5th Cir. 1977) (finding that "equitable considerations" allowed plaintiff to pursue untimely action because EEOC letter indicating only that conciliation efforts had failed but not that EEOC had decided not to sue was "patently misleading"); *see also Schlueter v. Anheuser-Busch, Inc.*, 132 F.3d 455, 458–59 (8th Cir. 1998) (equitably tolling plaintiff's case when EEOC misled plaintiff into believing she had filed a charge but had mistakenly instructed her to fill out an intake questionnaire and also calculated the expiration of the 300-day filing period based on an incorrect date); *Browning v. AT&T Paradyne*, 120 F.3d 222, 227 (11th Cir. 1997) (tolling statute of limitations when an EEOC investigator told plaintiff that incorrect statute of limitations applied). The district court's legal error in not considering the nonhearsay purposes of the statement in determining if this case is suitable for tolling thus qualifies as an abuse of discretion. *See Wright v. Farouk Sys., Inc.*, 701 F.3d 907, 911 (11th Cir. 2012) (finding abuse of discretion when district court erroneously excluded as hearsay admissions of party opponent); *United States v. Bell*, 367 F.3d 452, 465 (5th Cir. 2004) ("Whether the admission of objected-to [hearsay] evidence [of a statement against interest], was proper is a mixed question of law and fact; the factual determinations are reviewed for clear error and the legal issues are reviewed *de novo*."); *see also Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law.").

Once we identify a case as one involving a situation in which tolling may be appropriate, the next step is to balance the equities. We consider whether "the claimant has vigorously pursued his action," *see Rowe v. Sullivan*, 967 F.2d 186, 192 (5th Cir. 1992), and has taken "some step recognized as important by the statute before the end of the limitations period." *See Granger*, 636 F.3d at 712 (quoting *Perez v. United States*, 167 F.3d 913, 918 (5th Cir. 1999)). If a plaintiff is represented, we determine whether his "attorney has exercised due diligence in pursuing [the claimant's] rights," or if the situation is simply the result of "attorney error or neglect." *See id.* We also take into account any demonstrated prejudice to the defendant. *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (clarifying that absence of prejudice is not an independent basis for invoking equitable tolling but rather a factor to consider once it is determined that tolling might be appropriate). Those equities strongly favor tolling in this case.

This is not a case in which the attorney completely neglected deadlines or was otherwise indolent. *See Granger*, 636 F.3d at 712 ("We are reluctant to apply equitable tolling to situations of attorney error or neglect, because parties are bound by the acts of their lawyer."). From the beginning of the sequence of events that led to this late filing, Alvarado's attorney actively sought to move the case forward.[7] He contacted the EEOC after two years of agency inaction and requested a right to sue letter. When the EEOC sent the error-laden notice the following day, Alvarado's attorney's office immediately contacted the EEOC by email to notify it of the missing signature and date. That desire to have an EEOC letter with all the t's crossed and i's dotted is a sign of diligence rather than dawdling. *See id.* ("We are more forgiving, though,

[7] Alvarado was also diligent from the beginning, even before he hired an attorney. Although there is a 180 day window in which to file a charge with the EEOC, Alvarado filed his charge within 15 days of his termination.

when a claimant or her attorney has exercised due diligence in pursuing her rights."). Then, when more than a week had passed without a corrected notice, Alvarado's attorney again followed up with the EEOC by email. *See id.* at 713 (recognizing "attorney diligently and repeatedly followed up on [plaintiffs'] claims"). Of course, Alvarado would not be in this predicament if his attorney had filed suit within 90 days of the issuance of the original letter. There is almost always going to be something more the attorney could have done any time a suit is filed after the limitations period. But as we have explained, the decision to file this case within 90 days from the date of what the EEOC termed the "correct" letter was made in reasonable reliance on the EEOC's guidance. This is hardly a case of a plaintiff "sitting on his rights."

On the other side of the balance, we see no unfair prejudice to Mine Service resulting from the additional 20 days Alvarado took to file his lawsuit after the 90 days had elapsed since the first letter. *See Baldwin Cnty.*, 466 U.S. at 152. The more than two-year delay before this case arrived in federal court may well have caused prejudice to either side by weakening the recollections of witnesses. But almost all of that time period is attributable to the time the case was pending with the EEOC. The additional twenty days attributable to any late filing of the suit represents just over two percent of the total number of days that elapsed from the filing of the EEOC charge to the filing of this lawsuit. Both of the key equitable considerations—the plaintiff's exercise of diligence and any unfair prejudice to the defendant—thus strongly favor tolling.

Those equities also distinguish this case from the ones Mine Service cites. Those cases involved either a dilatory plaintiff or reissued EEOC letters that, other than a signature or date, were substantively identical. *Love v. Harsh Investment Corp.*, an unpublished Ninth Circuit case upon which the district court relied, had both. In that case, the EEOC first issued a right to

sue letter on October 5, 1989. 1993 WL 4811, at *1. Having never received the letter due to an unreported change of address, the plaintiff requested not a corrected notice but a copy of the original one, which he received on December 5, 1990. Love did not file his suit in federal court until April 1, 1991, almost four months after receiving the December 5 notification. *Id.* at *2. After finding that the unsigned, second letter was valid and properly notified the plaintiff of his rights, the court declined to equitably toll the 90-day period because the plaintiff did "not show[] due diligence or a basis to justify invocation of the doctrine of equitable tolling." *Id.* Similarly, in *Santini v. Cleveland Clinic Florida*, the plaintiff received an undated right to sue notice on February 2, 1998, but was reissued a dated copy that was otherwise identical on March 2, 1998. 232 F.3d at 824. The plaintiff filed suit on May 29, 1998. *Id.* Noting that the second notice was merely a reissuance of the first—identical other than the new date—the Eleventh Circuit held that the first notice provided the plaintiff with "actual knowledge" of his rights, negating any basis for equitably tolling the 90-day period. *Id.* at 825 (internal citations omitted). *Brown v. Mead Corp*, in which the Sixth Circuit also refused to equitably toll the 90-day period, provides the starkest contrast. *See* 646 F.2d at 1164. In that case, the plaintiff took no action after she received a notice of right to sue in December 1974, more than four years after she filed her initial charge with the EEOC. *Id.* Three years later, the plaintiff received a second, unsolicited notice notifying her that the first letter was the "product of administrative error and should be disregarded"; only then did the plaintiff file suit. *Id.* Understandably, there was no basis for tolling: the plaintiff did not file suit after receiving the first notice—which appeared valid—and in fact waited almost eight years from the date of her original EEOC charge before

filing suit, leaving "the employer with reason to conclude that the matter was resolved." *Id.* at 1167–68.[8]

Lastly, we address Mine Service's concern that plaintiffs will be encouraged to search for minor technical or clerical errors in right to sue letters in order to excuse late filings. But plaintiff's counsel asked the EEOC to correct the errors, which were not technical ones, immediately upon receiving the letter, not after facing a motion to dismiss for filing an untimely lawsuit. Our view of the equities would be much different in a case in which plaintiff's counsel requested a corrected letter post-lawsuit after realizing he was facing a limitations problem.

## III

Because the district court's decision not to toll stemmed from the legal error of failing to consider the EEOC's statements on which Alvarado's counsel relied for their nonhearsay purpose, we conclude that the district court abused its discretion when it failed to toll the 90-day limitations period. We therefore REVERSE the judgment of the district court and REMAND for further proceedings.

---

[8] The other circuit cases the district court relied on to deny equitable tolling are similarly distinguishable. *See, e.g.*, *Witt v. Roadway Express*, 136 F.3d 1424, 1430 (10th Cir. 1998) (applying Tenth Circuit law, which tolls a Title VII time limit "*only* if there has been active deception of the claimant regarding procedural requirements," which was not the case when the allegedly misleading letter from the Kansas Human Rights Commission was completely accurate (emphasis in original)); *Simmons v. Ill. Dept. of Mental Health and Dev. Disabilities*, 74 F.3d 1242, at *2–3 (7th Cir. 1996) (unpublished) (declining to toll when, applying "fault" approach focusing on "whether the delay in bringing suit was the 'fault' of the claimant," the plaintiff's failure to provide the EEOC with a proper address caused her first notice to be returned to sender and the suit was filed beyond the 90-day period even if tolled); *Lee v. Alta Pac. Grp.*, 990 F.2d 1258, at *1–2 (9th Cir. 1993) (unpublished) (declining to equitably toll 90-day period when plaintiff received two identical letters on two different dates—March 20, 1991 and April 5, 1991—because the second letter did not rescind the first).