EXHIBIT
D

# United States Court of Appeals for the Fifth Circuit

No. 23-10882

United States Court of Appeals
Fifth Circuit
**FILED**
June 7, 2024
Lyle W. Cayce
Clerk

DEBORAH ANN THOMAS,

*Plaintiff—Appellant*,

*versus*

DALLAS INDEPENDENT SCHOOL DISTRICT,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-2685

Before HIGGINBOTHAM, STEWART, and HIGGINSON, *Circuit Judges*.

STEPHEN A. HIGGINSON, *Circuit Judge*:*

Plaintiff Deborah Thomas, proceeding pro se, filed this suit against her former employer, the Dallas Independent School District ("DISD"), alleging race-, gender-, and age-based discrimination claims under Title VII and the Age Discrimination in Employment Act of 1967 ("ADEA"). DISD filed a motion to dismiss, which was granted by the district court. Thomas

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

appeals the dismissal of her claims. We AFFIRM in part and VACATE and REMAND in part.

I.

In 2022, Thomas filed a pro se complaint against DISD for failure to promote, hostile working environment, wrongful termination, and failure to hire based on her age, race, and gender. In her complaint, Thomas alleged that she had filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC") against DISD for its violations of the ADEA.

Thomas alleged that she was fifty-five years old at the time of her EEOC complaint. She had been an educator for twenty-five years and had been employed by DISD since 2007, most recently as a Campus Instructional Coach at Oliver Wendell Holmes Middle School ("Holmes") from 2015 to 2018. Thomas alleged that in March of 2018, she was informed that she would be terminated if she did not resign by a set date and that Instructional Coach positions were being eliminated at Holmes. She alleged that from 2010 to 2018 she had continuously applied for Assistant Principal positions, and that in the spring of 2018, she applied for eighty Assistant Principal positions posted by DISD. She interviewed for "close to 20 Assistant Principal positions, 3 Campus Instructional Coaching positions, an Instructional Lead position . . . and an Early Childhood Specialist position." She was not chosen for any of these positions, despite her twelve years of experience as an Instructional Coach and Department Chair. She alleged that, in her time as an Instructional Coach, she had helped the teachers she coached "double or even triple" scores on statewide math testing and that she had obtained a master's degree in Public School Administration in May 2001.

Thomas alleged that seven of the positions for which she interviewed were filled with candidates under 40. She alleged that "[m]any of these were

classroom teachers during the 2018 spring semester," and that "[a]lmost all those candidates had . . . graduated from college a couple to 3 years before their promotion[.]" As for one thirty-year-old candidate who was hired, Thomas alleged, only thirty percent of her students had passed state testing. Thomas learned that, with regard to other Assistant Principal openings for which she applied, candidates "that were 36 years old or younger" were hired. Additionally, she alleged that the principal of Holmes stated at a meeting that no positions were being eliminated and that the school would be hiring new teachers. However, she and another fifty-five-year-old staff member subsequently were discharged—though that staff member later found another position with DISD—while a younger campus instructional coach was retained in a different position. Thomas alleged that these actions are evidence of disparate treatment based on her age, and sought compensatory and punitive damages, back pay for benefits, and injunctive relief including "removal from any Non-renewal list" and placement into an Assistant Principal position. She also alleged discrimination based on race and sex, alleging specifically that Hispanic and male candidates had been hired over her. While in her complaint she sought relief under Title VII, she did not allege that she had filed a charge related to race or sex discrimination.

DISD filed a motion to dismiss, arguing that Thomas failed to exhaust administrative remedies for her claims before the spring of 2018, and that all her claims should be dismissed because she did not plead that she had received a right-to-sue letter from the EEOC before she filed her lawsuit. To support its argument regarding failure to exhaust, DISD attached a copy of Thomas's charge of discrimination from September 2018, in which she checked off only the box for age discrimination and stated she believed she was discriminated against because of her age. As to the merits, DISD argued that Thomas did not state a claim because she "fail[ed] to plead how her previous experience supports her qualification for the roles for which she was

applying," and because her allegation that seven of the twenty positions she applied for were filled by candidates under forty implied that "thirteen of the positions she applied for were filed by candidates over the age of forty." Thomas opposed the motion. In her opposition, she stated that the EEOC had sent the right-to-sue letter on August 30, 2022, but that she had not opened it until September 1 or 2, 2022, after she was called by an EEOC investigator, who informed her the letter had been issued. She also alleged that the email she received from the EEOC "stated that the 90 days began at the time of the plaintiff's opening of the email." She also attached to her response a copy of her résumé, showing each of her Instructional Coaching positions, and a copy of the job description for Assistant Principal.

A magistrate judge issued findings, conclusions, and recommendations in support of dismissal. The magistrate judge rejected DISD's argument that all of Thomas's claims were time-barred. Under the Rule 12(b)(6) standard, the magistrate judge held, the court could not look beyond the pleadings except to take judicial notice per under FED. R. EVID. 201, and Thomas could not amend her complaint through her opposition to the motion to dismiss. As to DISD's failure to exhaust argument, the magistrate judge found it appropriate to take judicial notice of the September 2018 charge document that DISD included with its motion to dismiss, because "[f]ailure to exhaust is an affirmative defense that should be pleaded." *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307 (5th Cir. 2018).

Given Thomas's reference in the charge only to age-related claims that accrued between March 27, 2018 and June 12, 2018, the magistrate judge concluded that Thomas had failed to administratively exhaust her claims except those under the ADEA for failure to hire and failure to promote. As to the claims that were not exhausted, the magistrate judge concluded that Thomas had failed to state a claim under the ADEA because she had not plausibly alleged that she was qualified for the positions to which she applied

or that she was similarly situated to the younger individuals who were hired or promoted instead of her.

In a one-paragraph order, the district court accepted the findings, conclusions, and recommendations of the magistrate judge. In the same order, the district court noted that Thomas had filed a proposed amended complaint, which the district court construed as objections to the magistrate judge's recommendation. Thomas's proposed amended complaint added the date of her right-to-sue letter and contained claims Thomas attempted to add under 42 U.S.C. § 1981. The district court rejected any proposed amended complaint, concluding that the amended allegations would be futile based on the reasons articulated by the magistrate judge, and that her § 1981 allegations "lack[ed] facts sufficient to establish the required element that race was a but-for cause of her alleged injury." As a result, the district court ruled that there was no need to grant Thomas leave to amend.

## II.

"Dismissals for failure to state a claim are reviewed de novo." *Cody v. Allstate Fire & Cas. Ins. Co.*, 19 F.4th 712, 714 (5th Cir. 2021). At this stage in proceedings, the panel must "accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Mayfield v. Currie*, 976 F.3d 482, 485 (5th Cir. 2020) (citation omitted). Dismissal is appropriate if a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.

On appeal, Thomas argues that the district court erred in dismissing her ADEA failure to hire or promote claims.[1] Proceeding pro se, she re-states the facts of her complaint, detailing her receipt of an "Excess Letter" in 2018 that informed her that she was being terminated as an "excess employee" due to changing enrollment needs in the district, and her subsequent attempts to attend job fairs and be hired as an Assistant Principal or Instructional Coach at several different DISD schools. Despite receiving "about 20 interviews" in the spring of 2018, she was not hired for any of the positions for which she applied, and she asserts that information provided by DISD to the EEOC investigator on Thomas's case showed that all of the positions were filled by younger applicants.[2]

---

[1] As a preliminary matter, Thomas seems to concede in her appellate brief that only her ADEA claim for failure to hire or promote is administratively exhausted. In any case, the district court did not err in its holding that Thomas had not exhausted her administrative remedies with regards to her race and gender discrimination, retaliation, hostile work environment, or wrongful termination claims. In her complaint, she alleges only one charge filed with the EEOC: the September 2018 charge. DISD filed a copy of that charge with its motion to dismiss, and the court took judicial notice of it. In the charge, which she filed on September 17, 2018, Thomas checked only the "age" box as the basis for discrimination and stated that between March 27, 2018 and June 12, 2018, she applied and interviewed for multiple Assistant Principal and Instructional Coach positions at DISD schools. She stated that she believed she was "discriminated against because of my age, (55)" in violation of the ADEA.

[2] She cites as one example the hiring of a thirty-year-old applicant for an Assistant Principal position at Pease Elementary School, whom Thomas herself had coached during her first year of teaching. According to Thomas, only 30% of that applicant's students had passed state math testing, and she had only three years of teaching experience. By contrast, Thomas argues, she had been an Instructional Coach for more than twelve years, and she was "overwhelmingly more qualified" for an Assistant Principal position given her record of success helping teachers raise state testing scores. The thirty-year-old applicant "had no such experience compared to [Thomas], nor did the other hiree[s] that were not under the protected class." She argues that this data "dispels" DISD's contention that she "was not qualified to lead teachers, students, and the school community to success as an Assistant Principal, Instructional Coach, etc."

The EEOC filed an amicus brief in support of Thomas. The EEOC contends that the district court erred because it applied a heightened pleading standard in dismissing Thomas's ADEA failure to hire and failure to promote claims, applying a "summary judgment-like scrutiny" that was appropriate only after discovery. The EEOC argues that this contravenes the holding of *Cicalese v. University of Texas Medical Branch*, which requires an ADEA plaintiff only to plead the "ultimate elements" of her claims at the motion to dismiss stage. 924 F.3d 762, 767 (5th Cir. 2019).

IV.

As in *Cicalese*, the core issue in this case is confusion between "the plausibility pleading standard of *Twombly/Iqbal*" and "the evidentiary standard of *McDonnell Douglas*." *Cicalese*, 924 F.3d at 766.

The latter relates to the *ultimate proof* that a plaintiff must furnish to show disparate treatment under the ADEA: a plaintiff must prove discriminatory motive, which she may do with either direct or circumstantial evidence. *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328, *as amended on denial of reh'g* (5th Cir. 1994). "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Bodenheimer v. PPG Indus. Inc.*, 5 F.3d 955, 958 (5th Cir. 1993).

If a plaintiff lacks direct evidence of discrimination, the *McDonnell Douglas* framework[3] requires that she establish a prima facie case of discrimination by showing that she (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than those outside the protected class. *Rutherford v.*

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*Harris County*, 197 F.3d 173, 184 (5th Cir. 1999). Once the plaintiff establishes the prima facie case, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the employment action." *Id.* Finally, "the plaintiff counters by offering evidence that the legitimate, non-discriminatory reasons are really a pretext for discrimination." *Id.* at 180.

But it is the first standard that is relevant here, as Thomas's claims were dismissed at the 12(b)(6) stage. "[A] plaintiff need not make out a prima facie case of discrimination [under *McDonnell Douglas*] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). Instead, at the motion to dismiss stage a plaintiff must plead two "ultimate elements" in order "to support a disparate treatment claim . . . : (1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* her protected status.'" *Cicalese,* 924 F.3d at 767 (emphasis in original) (citation omitted). In fact, "[a] court . . . inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss." *Id.*

DISD argues that the district court "merely referenced" the prima facie factors and "did not engage in a rigorous analysis of Thomas's allegations." First, DISD argues, "Thomas does not affirmatively allege that . . . younger candidates were not qualified for the positions to which they were hired[,]" and without more specific allegations about qualifications for the positions to which Thomas applied, the district court could neither draw inferences about the relative qualifications of the younger candidates nor conclude that Thomas's age was the "but-for" reason DISD did not hire or promote her. Similarly, DISD contends, Thomas does not allege that the younger candidates hired for the open job positions were "similarly situated" to her, and in fact her complaint suggests they were not: of the seven comparator candidates she referenced in her complaint, all were teachers, while

she had been an Instructional Coach, and none of them were "in the process of being terminated like she was."

But DISD's contention that the district court "merely referenced" the prima facie factors of *McDonnell Douglas* is belied by the findings, conclusions, and recommendations, which it accepted. The district court accepted the magistrate judge's conclusion that Thomas "ha[d] not" alleged facts sufficient to state a claim:

> [E]ven if [Thomas] has alleged facts to support that she is within the protected class and was neither hired nor promoted in Spring 2018, her complaint lacks allegations that raise an inference either that she was qualified or that she was treated less favorably than a similarly situated younger applicant/employee.

As to the second *McDonnell Douglas* factor, the district court concluded that "Thomas 'has failed to plead that [she] was qualified for the position[s] at issue' based on her alleged success as an instructional coach, department chair, or independent contractor." And, with regard to the fourth factor, the court concluded, "while she identifies the ages of some of those who received positions that she applied for, all under 40 . . . Thomas has not alleged that these younger individuals were similarly situated to her." Rather than "merely referenc[ing]" the *McDonnell Douglas* framework, the district court conducted its full analysis of the success of Thomas's claims in accordance with that test, and dismissed her complaint because it found she did not properly allege the second and fourth *McDonnell Douglas* factors.

In *Cicalese*, this court vacated a district court's dismissal of the plaintiff's claims of national origin discrimination because "[t]he court's analysis of the complaint's allegations—scrutinizing whether Appellants' fellow employees were really 'similarly situated' and whether [colleagues'] derogatory statements about Italians amounted to 'stray remarks'—was more suited to

the summary judgment phase." 924 F.3d at 768. The district court made the same error here. The parties do not dispute that, at fifty-five years old, Thomas was protected by the ADEA when DISD failed to hire her. 29 U.S.C. §§ 623(a)(1), 631(a). Following *Cicalese*, all that was required at the motion to dismiss stage was that Thomas plead facts that support an inference that she was not hired "'*because of* her protected status.'" *Cicalese,* 924 F.3d at 767 (emphasis in original) (citation omitted).

She did so: she alleged that she had been an educator for twenty-five years, that she had a master's degree, and that she had been employed by DISD since 2007. She alleged that, in that time, she had a consistent record of success as an Instructional Coach, a position that she had served in for twelve years. She alleged that she had interviews for twenty positions, including Instructional Coach positions, and that she was not chosen for any of these jobs. Thomas alleged that seven of the positions for which she interviewed were filled with candidates under forty, and that "[a]lmost all those candidates had . . . graduated from college a couple to 3 years before their promotion[.]" She alleged that she had coached some of the candidates who were hired as Assistant Principals, and that one thirty-year-old candidate was hired as an Assistant Principal despite having only a thirty-percent state testing pass rate as a teacher. Finally, she alleged that this occurred after she and another fifty-five-year-old Instructional Coach lost their positions, while a younger Instructional Coach was placed into a different position that was never advertised.

These facts alleged in the complaint are far more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. They raise at least an inference that Thomas, who alleges that she had significantly more experience at DISD and as an educator than many of the candidates who were hired—several of whom had not even entered college when she began as an Instructional Coach

for DISD—was not hired due to her age. Whether she can make out a prima facie case and whether DISD had non-discriminatory reasons for hiring other, younger candidates are questions for summary judgment rather than a motion to dismiss.

V.

Finally, DISD argues that, applying de novo review, this court should dismiss Thomas's claims as unexhausted because she did not allege the date of her right-to-sue letter or as untimely "due to her failure to file this lawsuit within ninety days of receipt of her Right to Sue letter based on the admissions contained in her Response to the Motion to Dismiss." DISD contends that, because the right-to-sue letter was emailed to Thomas on August 30, 2022, she should have filed this suit no later than November 28, 2022 rather than on December 1, 2022, the day she did file.

DISD is correct that "[a]lthough filing of an EEOC charge is not a jurisdictional prerequisite, it 'is a precondition to filing suit in district court.'" *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002) (citation omitted). Though "[f]ailure to exhaust is an affirmative defense that should be pleaded," *Davis*, 893 F.3d at 307, "[c]ourts within this Circuit have repeatedly dismissed cases in which the plaintiff did not file a complaint until after the ninety-day limitation period had expired," *Taylor*, 296 F.3d at 379.

As is discussed above, the district court rejected DISD's time-bar argument because Thomas's allegations—that the EEOC emailed the right-to-sue notice to her on August 30, 2022 but that she opened the email on September 1 or 2, 2022, and that she was informed by the EEOC that the 90 days began when she opened the email—appear in her response to DISD's motion to dismiss, and therefore were not part of the pleadings. Importantly, Thomas included an allegation that the EEOC investigator told her that "90

days would start when I opened the email containing the Right To Sue Letter," as well as a copy of the right-to-sue letter dated August 30, 2022, in the proposed amended complaint that the district court denied as futile.[4]

This circuit has recognized that "equitable tolling can excuse an untimely filing in the following circumstances: '(1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of her rights.'" *Melgar v. T.B. Butler Publ'g Co.*, 931 F.3d 375, 380 (5th Cir. 2019) (citation omitted); *see also Manning v. Chevron Chem. Co. LLC*, 332 F.3d 874, 881 (5th Cir. 2003) ("We apply equitable tolling when an employee seeks information from the EEOC, and the organization gives the individual incorrect information that leads the individual to file an untimely charge.").

We express no opinion on the merits of Thomas's allegations that she was misinformed by the EEOC regarding when the 90-day period for her to file a lawsuit began. However, we do note that, in the proposed amended complaint that she filed with the district court, she alleged facts that indicate a colorable argument for equitable tolling—just as DISD has made a colorable argument that the claims are untimely. The district court concluded that the amended complaint was futile on grounds that we have now rejected, and on remand the district court may consider the factual allegations that support equitable tolling as well as DISD's failure to exhaust affirmative defense.

## VI.

[4] In her appellate briefing, Thomas repeats that she did not open the email until September 2, 2022, and that "Investigator Billie Cashew said that the 90 days did not start until the email was opened" and instructed Thomas to write down the date that she opened the email.

We AFFIRM the district court's dismissal of Appellant's Title VII race and gender discrimination, retaliation, hostile work environment, and wrongful termination claims. We VACATE and REMAND with regard to her ADEA failure to hire or promote claim.